### No. 1254.

CAROLINE E. HEATH ET AL. VS. TEXAS AND PACIFIC RAILWAY COMPANY.

Prescription begins to run, not from the building of a railway-bed, but from the time damage is caused by it.

A railway company must so build its road-bed as not to impair the drainage of the land over which it passes, and must construct necessary cattle-guards and crossings, under penalty of paying damages for injuries caused by its omissions.

The failure to stipulate in the donation of the right of way that cattle-guards and crossings must be provided does not deprive the donor from recovering for injury caused by want of them. They are incidents of railroad building. The company must build them for its own protection.

APPEAL from the Thirteenth District Court, Parish of St. Landry. *Hudspeth*, J. ———

*E. P. Veazie* and *Thos. H. Lewis* for Plaintiffs and Appellees.

*Moseley & Foster* for Defendant and Appellant.

---

The opinion of the Court was delivered by

MANNING, J. The plaintiffs sue for $6500 as damages for injury to their land by obstruction of its drainage, by digging pits and holes outside of the 150 feet width donated the company, by failure to construct crossings, and for injury to crops from not making cattle-guards in consequence of which stock entered. The injury from obstruction of drainage is claimed to be $2,500—from inconvenience caused by want of crossings $1,500—from the pits and holes $2,000— from depredation of cattle upon crops $500.

The case was tried by the judge alone who awarded $1,540, of which $1,000 was for injury to the drainage, $500 for injury to crops from cattle, and $40 for failure to make crossings.

There were also allegations that the injury was continuing and unless the defendant was compelled to do what was needful to prevent its perpetuity, great and increasing damage would be suffered.    Upon this branch of the demand the judge ordered the defendant to make the needful crossings, repair the cattle-gap, restore the drainage, cut openings on the road-bed etc all before October 1, 1885.

The defendants pleaded the prescription of one year supposing it began to run from the completion of the railway, March 1, 1882.    The suit was brought August 20, 1883.    Prescription begins to run, not from the building of the road-bed, but from the time the damage is caused by that act.    Hotard v. Tex. & Pac. R. Co., 36 Ann. 450.

The tract contains about 175 acres of open land which is unequally divided by the railway track, 140 acres being on the east of it.   It is on the bayou Petite Prairie in St. Landry parish, which runs north and south or nearly so.    The railway crosses the bayou near the southeastern corner of the tract, traverses the open land diagonally with a trend, and emerges at the north-western corner.   The drainage is from the front to the rear—from the bayou to the swamp.

The testimony in suits such as this is always conflicting. Mr. Phipps, a civil engineer of the defendant, has made a plat of the tract and says the construction of the railway-bed has not impaired the drainage. Mr. Heath, a son of the widow Heath and her co-plaintiff, a man of twenty-six years who has always lived on the place and managed it for several years, says seventy acres of it is seriously injured. He says there were two natural drains running from front to rear which were totally stopped up by the road-bed—that ditches had been dug leading into and from these drains which were also stopped and an artificial drain parallel with the others was obstructed in like manner, and that water stood on the land, unable to escape. Previous to this the family derived a comfortable subsistence from the place, but since then renters had refused to lease from them or rented at reduced prices and their own cultivation of such parts as had not been rented was very much less productive.   He goes into details and talks very intelligently.   He foresaw that the road-bed would do the very injury it has done and while it was constructing remonstrated with the engineer who was ordering and superintending the work.   He told him it would ruin a large part of the land and the engineer answered "we do not propose to build this road to please the people but to suit ourselves."

He was equally prescient and careful about the cattle-guards.   He requested the company to construct them at certain points and in a

certain way that would have effectually prevented the ingress of cattle but it was not done until after his crop of 1882 was injured seriously

Each of these witnesses is supported by others. We have gone throu gh the testimony with care and we are unable to discover that we could better balance it than the district judge has done, or that we could alter his conclusions and give a good reason for it.

There is no doubt upon the law of the case. A railway-company must so build its r oad-bed as not to needlessly injure the land over which it passes. It cannot obstruct drainage with impunity. It must make crossings and cattle-guards on pain of responsibility for damage caused by the omission to make them. Bourdier v. Morgan R. Co.. 35 Ann. 947; Eatman v. N. O. Pac. R., *Idem*, 1018.

In the Eatman case there was an express stipulation in the grant of the right of way that cattle-guards should be made. There is none in the plaintiffs' donation, which was voluntary and without consideration, but they are entitled to these safeguards that are usual and necessary as much as if expressly stipulated. They are a part of the fixtures that custom and necessity requires for the operation of railroads through open cultivated fields. Rev. Civ. Code, arts. 1964-5.

Judgment affirmed.