6606

MORAGNE v. CHARLESTON & WESTERN CAROLINA RY. CO.

Railroads.—A road leading from a public road across a railroad to a dwelling and used only by the owner and the tenant of a neighbor as an outlet to the public road is a private way, and the railroad company is not required under sec. 2183, Code 1902, to keep the crossing in repair.

Before Purdy, J., Abbeville, March Term, 1907. Affirmed.

Action by J. P. Moragne against Charleston and Western Carolina Ry Co. From judgment for defendant, plaintiff appeals.

*Mr. Wm. N. Graydon,* for appellant, cites: 15 Ency., 352; 7 Rich. L., 392; 11 S. C., 361; Code, 1902, 2183.

*Mr. Wm. P. Greene,* contra, cites: 63 S. C., 494; Code, 1902, 2183; 53 S. C., 118; 75 S. C., 455; 35 A. & E. R. R. Cas., 292.

July 27, 1907. The opinion of the Court was delivered by

Mr. Chief Justice Pope. Plaintiff, T. P. Moragne, brought this action against the defendant railway company to recover damages for injury to a mule alleged to have been caused by a defective crossing on its road. Defendant denied its liability on the ground that the road was a private way and not such a crossing as it was required by law to keep up. The facts are as follows: Some time after the road was built defendant established the crossing in question. The road leads from plaintiff's home across the railroad to the public road and certain farm lands, and is used by plaintiff's family, the family of the tenant of one Porter, and, according to the testimony of the plaintiff, "every one who had business in there, coming or going to my house" or going

to Mr. Porter's place. The crossing had been bad for several years, but defendant, although frequently requested to do so, had neglected to fix it and refused to allow plaintiff to do so. On February 22d, 1906, plaintiff was crossing with a load of fertilizer and his mule's foot was caught between a projecting spike and the rail, thus throwing it forward and crippling it, according to his testimony, permanently. The case was heard at the March, 1907, term of Court for Abbeville County, and resulted in the direction of a verdict by the presiding Judge, Hon. R. O. Purdy, for the defendant, the ground being that it was a private crossing. Plaintiff appeals.

The question of roads has more than once been discussed in this State and the law on the subject is well settled. *State* v. *Hardin,* 11 S. C., 366; *State* v. *Tyler,* 54 S. C., 294, 32 S. E., 422; *Kirby* v. *Railway,* 63 S. C., 500, 41 S. E., 765. According to these decisions there are three kinds of roads, viz: highways, composing two classes, public roads, and private *paths* or neighborhood roads, and private ways. The first two classes named are public in contradistinction from the last, which is private. *State* v. *Harden, supra.* The three classes are very clearly distinguished in the case of *Kirby* v. *Railway, supra,* the distinction between private paths or neighborhood roads and private ways, the two classes germane to this discussion, being that the former runs from one public road to another public road, or from a public road to some other public place, or from one public place to another, while the latter does not connect any public road or public places at all. Again, to acquire a right to the former, use for twenty years is all that is necessary, while in the latter case adverse use must be shown. From the distinctions as made by the Court, however, we do not think that only those are neighborhood roads which run from one public road to another public road, or from a public road to a public place, or from one public place to another. Conceivably a road might be an outlet of a community numbering hundreds of people and yet connect only at one end with

a public road or other public place.  Will it be contended that such a road is less a public way than one that leads off to a church or mill?  Certainly not.  On the other hand, not every road connecting with a public road is a neighborhood road, as, for instance, roads leading up to residences, such as avenues and outlets to roads.  These are clearly private.  The distinction must rest on the facts of the various cases.  The road now under consideration falls under the class last alluded to, being only a way up to plaintiff's house and for his convenience and for the use of the tenant of Mr. Porter, and running across their property.  The evidence most favorable to plaintiff was that it was an outlet for himself and tenants of Mr. Porter, and such people as *desired to visit their homes.*  If this were all that was required to be shown in order to establish the fact of a public road, whenever occasion demanded it, any avenue or road leading up from the public road to a private house could easily be shown to be a neighborhood road.  We think the Circuit Judge was correct in holding that the only inference from the testimony here produced was that the road was a private way.

The appellant contends, however, that section 2183 of the Civil Code gives him a right to recover, even though it be a private way.  That section provides: "A railroad corporation whose road is crossed by a highway or other way on a level therewith shall, at its own expense, so guard or protect its rails by plank, timber, or otherwise, as to secure a safe and easy passage across its road; and if in the opinion of the county board of commissioners, or if such highway or other way be within the corporate limits of any city, town or village, then the proper municipal authorities thereof, any subsequent alteration of the highway or other way or any additional safeguards, are required at the crossing, they may order the corporation to establish the same."  This contention, we think, cannot be sustained.  Aside from any implication of the act, the only reasonable construction would be that it applied only to public roads.  Carried to the conclusion contended for by the appellant, a railroad company

would be required to provide for every crossing or path across its roadbed, whether public or private. Even at ways where the statutory signals are not required the company would have to provide for crossing. Such a construction cannot be legitimate. The railroad company is owner in fee of its right of way and its right to control it is analogous to the right of individuals to control individual property. As in the case of property owned by a person, so must the right of a railway give place to a public right when the welfare of the public demands it. When, however, private advantage is sought to be gained there is no power of condemnation. One of the very foundation elements of all civilization is the right to hold property and exercise control over it. Even governments themselves cannot legitimately rob one person of his property and give it to another. Recognizing this principle the framers of our constitution provided therein that private property should not be taken for private use without the consent of the owner. Clearly, therefore, this being a private way the use would be private. The legislature then has no power to place the burden on railways of keeping up such crossings. *Mays* v. *Seaboard Railway,* 76 S. C., 455.

But, aside from this consideration, the clear implication of the act is that it is to apply only to such roads as are under the authority of the county commissioners or under the control of the municipal authorities. Such roads alone would come under their observation. Not being responsible for private ways, it is hardly reasonable to suppose, even if the user thereof did not object, that the commissioners would interest themselves to the extent of examining private crossings. In the case now under consideration, it does not appear that the commissioners were even cognizant of the crossing. It was established merely as an accommodation and was used with the road's consent. There was absolutely no evidence of adverse possession.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.