### 8477

### MILLER v. SEABOARD AIR LINE RY.

RAILROADS—CROSSINGS.—A railroad company is liable to the owner of a tract of land through which it has acquired a right of way by con-demnation for damages to a horse caused by negligence in maintain-ing a crossing, which it had made for the convenience of the land-owner in passing from one tract of his land to another, and which he had used for several years.

*Moragne* v. *Ry.*, 77 S. C. 437, *distinguished from this.*

Before ERNEST GARY, J., Richland, May, 1912.  Reversed.

Action by J. Q. Miller against Seaboard Air Line Railway.　Plaintiff appeals.

*Messrs. Elliott & Herbert,* for appellant, cite: 1 Thomp. on Neg., sec. 968; 61 S. C. 558; 67 S. C. 508; 82 S. C. 324.

*Messrs. Lyles & Lyles,* contra, cite: 67 S. C. 499; 68 S. C. 483; 72 S. C. 389; 82 S. C. 321; 75 S. C. 292; 86 S. C. 106; 90 S. C. 331.

March 20, 1913.　The opinion of the Court was delivered by

Mr. Justice Fraser.　This is an action for damages arising from an injury to the horse of the plaintiff while on a crossing on plaintiff's land.　The crossing was put there by the railroad company.　The following is taken from the case:

"The case came on for trial in the Court of Common Pleas for Richland county on the 15th day of May, 1912, before his Honor, Judge Ernest Gary, and a jury.　It is agreed by counsel that the following is a statement of the testimony:

"Plaintiff and his son testified that at a point about two miles north of Columbia defendant's railway passed through a tract of land owned by the plaintiff, the right of way having been acquired by condemnation.　At the time defendant's line was built a private railway crossing was put in by the defendant, which enabled plaintiff and those working on his place to cross from one part of plaintiff's farm to the other, and said crossing had been used by plaintiff and those employed by him for nearly ten years.　They testified that the crossing was one made by spiking down strips of plank on each side of the rail.　Plaintiff's son testified that he was present when plaintiff's horse had one of its feet caught between the spike, which he describes as not properly driven in and being in a defective condition, and that said horse was

thereby injured. Plaintiff himself testified that he examined the crossing and found the spike protruding and the crossing in a defective and unsafe condition. Both witnesses testified that the horse was seriously injured.

"For defendant, J. E. Sewell, section foreman, testified that he passed there with some of the employees shortly after the alleged accident and that the crossing was in proper condition. Also, that he examined the horse and could find nothing wrong with him.

"At the conclusion of the testimony, his Honor, the presiding Judge, at the request of defendant, directed a verdict in favor of defendant, stating that he was bound by the case of *Moragne* v. *Railway Company*, 77 S. C. 437, 58 S. E. 150, which precluded any recovery where the injury took place at a private crossing. His Honor further said his own view of the law was that the plaintiff, under circumstances where he came on the premises at the invitation of defendant, should be allowed to recover, but that the case of *Moragne* v. *The Railway Company* held differently, and he was thereby bound, and he therefore directed a verdict for defendant.

"The plaintiff duly served notice of intention to appeal to the Supreme Court."

The following are plaintiff's exceptions:

1. "Because his Honor, the presiding Judge, erred in directing a verdict for defendant on the ground that under the law in this State the plaintiff cannot recover where the accident occurs at a private crossing, even though the defendant impliedly invited plaintiff on the premises and plaintiff was a permissive user of same; whereas, his Honor should have held that if defendant was maintaining a crossing between plaintiff's two tracts of land, and negligently allowed same to become defective, whereby plaintiff's horse was injured, that plaintiff was entitled to such damages as the jury should determine he had sustained.

2. "Because his Honor, the presiding Judge, erred in directing the jury to find in favor of the defendant, because although he considered the law should be that if plaintiff was a licensee, or came on the premises by invitation of defendant and defendant was due him the duty of ordinary care, that nevertheless the law in this State has been determined contrary to this view in the case of *Moragne* v. *The Railway Company,* 77 S. C. 437, 58 S. E. 150, and that his Honor was thereby bound; whereas, he should have held that the defendant owes those who go on its premises, through license or invitation, the duty of ordinary care so as not to injure them, and that it was a question to be determined by the jury whether the defendant had in this respect fulfilled its obligation to the plaintiff."

The case of *Moragne* v. *The Railway Company,* 77 S. C. 437, 58 S. E. 150, does not govern this case. In that case it did not appear that the plaintiff owned the land at the crossing over which the railroad has a right of way. In this case the plaintiff, Miller, was the owner of the fee in the land and the defendant had all that it could acquire by condemnation, to wit, the right to make such use of the land as was necessary for railroad purposes. In this case the land was "condemned." The condemnation statutes provide only for the taking of a right of way. In *Simpkins* v. *Columbia and Greenville R. R. Co.,* 20 S. C. 263, this Court says: "The plaintiff still retained the ownership of the land and might lawfully use it in any way not inconsistent with the easement of the defendant."

Miller, therefore, had the right to cross the railroad on his own land wherever he saw fit to do so, provided, he did not interfere with the right of the railroad to use its right of way for railroad purposes. In the exercise of this right to cross the railroad right of way at any time and place not inconsistent with the use for railroad purposes he might, through want of skill or negligence, have seriously or disasterously interfered with the use of the right of way.

When, therefore, the company put a crossing at a place chosen by it and thereby invited him to exercise his right to cross at that point, the company was liable for injury resulting from the negligent construction or maintenance of the way which it had made.

The judgment is reversed, and the cause remanded for a new trial.

MR. CHIEF JUSTICE GARY *concurs in the result.*

MR. JUSTICE WOODS, *concurring.* The defendant, railroad company, acquired by condemnation a right of way through plaintiff's farm, and constructed its road so as to divide his tract of land into two parts. For the convenience of the plaintiff in using his lands, the defendant made for him a crossing, which was used by him and his employees for nearly ten years. The evidence on the part of the plaintiff tended to prove that his horse was injured by stepping on a spike which had been negligently driven into a plank on the crossing. In this action for damages for injury to the horse the Circuit Judge directed a verdict for the defendant, holding that the decision of the Court in the case of *Moragne v. Charleston & W. C. Ry. Co.,* 77 S. C. 437, was conclusive against the plaintiff.

We think that the Circuit Judge was in error, and that this case falls under an entirely different principle.

The rule established by authority and reason, from which we find no dissent, is that where a railroad company acquires a right of way, either by deed or by condemnation, which divides one tract of land into two parts, the law will not impute an intention so unreasonable as that the railroad company intended to exclude the owner from the right to pass from one part of his land to the other, or that the owner of the land meant to part with such right, but, on the contrary, will hold that the intention was that the owner of the land would of necessity have the right of crossing, if

a crossing could be made so as to not to interfere materially with the use of the right of way, acquired, by the railroad company. *Baltimore & O. Ry. Co.* v. *Slaughter,* 167 Ind. 330, 79 N. E. 186; *Kansas City & E. R. Co.* v. *Kregelo,* 32 Kan. 608, 5 Pac. 15; *Atchison, T. & S. F. Ry. Co.* v. *Conlon,* 9 Kan. 338, Kan. 601, 5 Pac. 321; *New York & N. E. Ry. Co.* v. *Board of Railroad Commissioners,* 162 Mass. 81, 38 N. E. 27; *Kirk* v. *Railway Co.,* 25 So. 463; *Heath* v. *Railroad Co.,* 37 La. Ann. 728; *Railroad Co.* v. *Ford,* 42 S. W. 589.   While the precise point was not involved in *Simpkins* v. *Columbia & G. R. Co.,* 20 S. C. 258, that case was decided on the same principle.

It is not necessary to decide in the present case whether the duty to make and maintain the crossing devolved on the landowner or the railroad company, because the railroad company having voluntarily assumed the duty, and having made the crossing, impliedly invited the plaintiff to use it, and was bound to keep it in repair.   On this point, the case falls directly within the rule thus laid down in *Matthews* v. *Seaboard Air Line Ry.,* 67 S. C. 499: "While a railroad company can not lose its right of way by alienation or prescription, because of the public's interest in its holding it for public purposes, it may impose upon itself as a private corporation duties and obligations to the public or to individuals, by inviting the use of the right of way, or indicating its willingness that it should be used by the public or particular individuals.   In such circumstances, the duty devolves on the railroad company to exercise ordinary care to avoid injury to those using the right of way.   This rule is not peculiar to railroads, but is of general application.   The invitation need not be expressed in words, but may be implied in a number of ways: such, for instance, as the actual construction or repairing by the railroad of a road or a bridge along the right of way, which would not be suggestive of any other use except travel on foot or in the ordinary vehicles of the country."

At the argument, counsel for the defendant earnestly insisted that the doctrine of an implied invitation, carrying with it the duty of using reasonable care to make the way safe, is limited to the public, and has no application to particular individuals. It is sufficient to say that the rule quoted above from the Matthews case was laid down after careful consideration of both reason and authority on the subject. There is certainly no reason for the distinction contended for between the invitation and liability to the general public and to a particular individual, and the authorities above cited, and many others, show that the distinction is without judicial recognition.

The case of *Moragne* v. *Railway Co., supra,* was entirely different. That decision being not only consistent with but required by the principles laid down in *Matthews* v. *Railway, supra.* The facts in the former case are thus stated by the Court: "Sometime after the road was built defendant established the crossing in question. The road leads from plaintiff's home across the railroad to the public road and certain farm lands, and is used by plaintiff's family, the family of the tenant of one Porter, and, according to the testimony of the plaintiff, every one who had business in there, coming or going to my house or going to Mr. Porter's place. The crossing had been bad for several years, but defendant, although frequently requested to do so, had neglected to fix it and refused to allow plaintiff to do so. On February 22, 1906, plaintiff was crossing with a load of fertilizer and his mule's foot was caught between a projecting spike and the rail, thus throwing it forward and crippling it, according to the testimony, permanently." Thus it appears that the crossing did not connect different parts of the plaintiff's farm, that it was not on his land, and that he had no right to maintain it or to require the railroad company to do so. More important still, the plaintiff knew it was in bad repair, and, therefore, dangerous, and he had full notice of the railroad company to abandon it and repu-

diate any duty to keep it up, by its refusal to repair it or allow him to do so. The evidence thus showed conclusively that if there ever had been an implied invitation to use the crossing, it had been withdrawn by a still stronger implication of withdrawal, namely by direct notice to the plaintiff that it would not be kept up. The rule and the distinction is thus stated in the Matthews case: "Those who walked in the path here described, entered, not a public highway, but the property of the railroad companies as licensee; and even if they did so in pursuance of an invitation, express or implied, but knew of the existence of the cut and its dangerous condition, they accepted the invitation in full view of the danger, and for their own convenience voluntarily assumed it. In such a case, it seems clear that the railroad companies would not be liable for resulting injuries."

It follows that the Circuit Judge was in error in not submitting the issues to the jury.

MESSRS. JUSTICES HYDRICK *and* WATTS *concur.*