735 S.E.2d 528

**PAINE GAYLE PROPERTIES, LLC, Appellant,**

v.

**CSX TRANSPORTATION, INC., Respondent.**

Appellate Case No. 2010–178026.

No. 5049.

Court of Appeals of South Carolina.

Heard Sept. 12, 2012.
Decided Nov. 14, 2012.
Rehearing Denied Dec. 19, 2012.

G.P. Callison, Jr., of Callison Dorn Law Firm, of Greenwood, for Appellant.

Elizabeth A. McLeod, of Fulcher Hagler, LLP, of Augusta, Georgia, for Respondent.

GEATHERS, J.

Appellant Paine Gayle Properties, LLC (Landowner) brought this action against Respondent CSX Transportation, Inc. (Railroad), seeking an order establishing an easement across a right-of-way held by Railroad. Landowner and Railroad filed cross-motions for summary judgment, and the circuit court granted summary judgment to Railroad. Landowner seeks review of this order. We affirm.

## FACTS/PROCEDURAL HISTORY

On May 31, 1995, Richard R. Gayle, a member of Landowner, purchased from Wayne King a fifteen-acre tract of land in McCormick County adjacent to the Savannah River (the Property).[1] On the same date, Gayle conveyed a one-half interest in the Property to Travers W. Paine, III, Landowner's other member. On January 1, 2003, Paine and Gayle individually conveyed the Property to Landowner.

The Property is bounded on the north and east by a two-hundred-foot right-of-way held by Railroad, which extends south to the river bank. Pollard Lumber Company (Pollard) owns the land to the immediate north and east of Railroad's right-of-way. The record is unclear as to who owns fee simple title to the land underlying Railroad's right-of-way,[2] although

---

1. To be exact, the Property measures 15.16 acres.

2. The extent of Railroad's rights as to the underlying land is discussed in the analysis section of this opinion.

it is clear from the legal descriptions of their respective properties that neither Landowner nor Pollard owns title to the underlying land.

The Property can be accessed by watercraft via the Savannah River. However, the only motor vehicle access for the Property is a gravel roadway that runs beneath Railroad's trestle (the access road). Pollard granted an easement to Landowner across the southwesterly part of its land, which runs adjacent to Railroad's right-of-way, for the purpose of constructing an improved right-of-way for ingress and egress; the access road running beneath the trestle picks up where the easement granted by Pollard terminates.

Railroad uses the access road whenever repair work on the trestle is necessary. The distance from the bottom of the trestle to the underlying access road is twelve feet, two inches at the highest point. The width of the useable part of the access road is eleven feet, two inches, at its widest point.

Since purchasing the Property, Paine and Gayle have used the access road to visit the Property, to harvest timber from the Property, and to build a cabin on the Property. In 2001, Paine paid South Carolina Electric & Gas Company (SCE & G) $5,147 to obtain a utility easement from Railroad for the purpose of running electrical lines through Railroad's right-of-way to the cabin on the Property. This amount included $2,872 to be paid to Railroad for the easement and $2,275 for SCE & G to install the service lines under Railroad's tracks.

Landowner also obtained permission from Railroad's security officer, Steve Purvis, to build a gate across the access road to keep out trespassers. Purvis acknowledged that the gate helped Railroad guard against potential liability for trespasser injuries. Landowner and Railroad possessed keys to the locks on the gate.

In 2004, Paine and Gayle appeared before the McCormick County Planning Commission (the Commission) to present Landowner's plans for a small subdivision on the Property. In his deposition, Paine testified that Landowner had paid its engineers approximately $35,000 for the plans and drawings. The Commission indicated that Landowner would have to obtain a written easement from Railroad to cross its right-of-way in order to run a water line into the subdivision. Land-

owner's efforts to speak with a Railroad employee with authority to grant the easement were unsuccessful. Subsequently, Landowner filed the present action, seeking an order recognizing its alleged right to cross Railroad's right-of-way to access the Property.[3]

In its amended complaint, Landowner asserted the following causes of action: "Easement by Grant," "Easement by Implication," "Easement by Prescription," "Easement by Necessity," "Adverse Possession," "Equitable Estoppel," "Laches," and "General Law of Easements." Landowner and Railroad filed cross-motions for summary judgment, and the circuit court granted summary judgment to Railroad, while denying Landowner's summary judgment motion.

In its order granting summary judgment to Railroad, the circuit court recognized that the ownership of the strip of land underlying Railroad's right-of-way was unclear. The circuit court, however, concluded that Landowner did not own the fee underlying Railroad's right-of-way.[4] The circuit court further indicated that due to Landowner's failure to establish at least one essential element of each of its causes of action, Railroad was entitled to judgment as a matter of law. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in granting summary judgment to Railroad on the issue of easement by equitable estoppel?

2. Did the circuit court err in granting summary judgment to Railroad on the prescriptive easement claim?

3. Did the circuit court err in granting summary judgment to Railroad on the issue of laches?

4. Did the circuit court err in granting summary judgment to Railroad on the issue of easement by necessity?

---

3. Landowner filed this action because it could not locate a person with authority to grant a written easement. Paine admitted: "We are here because ... we can't get the attention of the railroad to discuss an easement." Paine also admitted: "We don't know who to talk to."

4. Landowner has not appealed this conclusion.

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the trial court pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.,* 383 S.C. 11, 14 n. 2, 677 S.E.2d 612, 614 n. 2 (Ct.App.2009). Rule 56(c), SCRCP, provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder." *Matsell v. Crowfield Plantation Cmty. Servs. Ass'n, Inc.,* 393 S.C. 65, 70, 710 S.E.2d 90, 93 (Ct.App.2011) (citing *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001)).

An adverse party may not rely on the mere allegations in his pleadings to withstand a summary judgment motion, but must set forth specific facts showing there is a genuine issue for trial. *Strickland v. Madden,* 323 S.C. 63, 68, 448 S.E.2d 581, 584 (Ct.App.1994). Nonetheless, "in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co.,* 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## LAW/ANALYSIS

### I. Railroad Rights–of–Way

To foster a complete understanding of the parties' respective rights, we begin our analysis of the issues in this case by explaining the nature of railroad rights-of-way. Ultimately, however, the precise nature of the estate held by Railroad in the strip of land underlying its right-of-way does not affect our analysis of Landowner's easement claims.

"The term 'right-of-way,' as used in deeds, has dual meanings: it is sometimes used to describe the right belonging to a party allowing passage over any tract and is also used to describe that strip of land that railroad companies take upon

which to construct their road-bed." 65 Am.Jur.2d *Railroads* § 31 (2012). Likewise, the term can have two purposes: (1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land, i.e., an easement; or (2) to describe the strip of land being conveyed to a railroad for the purpose of building a railway. *Id.* A railroad can acquire real property for railway operations only pursuant to a statute, and "when so authorized, a railroad may acquire an interest in real property by eminent domain, by purchase, or by voluntary grant." *Id.* at § 33.

A railroad right-of-way allows a railroad company "the free and perfect use of the surface of the land as far as is necessary for all its purposes, and **the right to use as much above and below its surface as may be needed.**" *Id.* at § 66 (emphasis added). A railroad right-of-way has been described as "an easement with the substantiality of a fee and the attributes of a fee, perpetuity, and exclusive use and possession . . . ." *Id.* at § 62.

Here, the statute chartering Railroad's predecessor in interest, the Greenwood and Augusta Railroad Company, states that the Company "shall have the same presumptive right and title, and to the same extent, to lands through which their railroad may be built, **in absence of any agreement with the proprietor** ... **of such lands,** which is possessed or enjoyed by any other railroad, in [South Carolina and Georgia], as to the lands through which their railroad may have been, or may be, constructed, in absence of any contract with the owners thereof." Act No. 170, § 7, 1872 S.C. Acts 216, 219 (emphasis added). The "presumptive right and title" possessed by other railroads in South Carolina and Georgia when the Greenwood and Augusta Railroad Company was chartered is set forth in section 7 of 1868 Act No. 42, which provides that upon payment of compensation to the landowner, a right-of-way over the subject land,

> or the use of said lands for the purposes for which the same were required, shall vest in the person or corporation who shall hold the charter of such highway, so long as the same shall be used for such highway, and no longer; **but the fee in such lands subject to such special uses shall remain in the owner thereof, and nothing herein contained shall be construed to confer upon such person or corporation any**

right in, or power over, the lands so condemned, other than such as may be within the particular purpose for which such lands were condemned.

Act No. 42, § 7, 1868 S.C. Acts 88, 90 (emphasis added). In other words, in the absence of an agreement by the owner to grant to the Greenwood and Augusta Railroad Company a fee simple estate in the land underlying its right-of-way, the company held merely a right-of-way easement. As recognized by the circuit court, the parties presented inconclusive evidence concerning the estate granted to the Greenwood and Augusta Railroad Company. The circuit court, however, concluded that Landowner did not own the fee underlying the railroad right-of-way, and Landowner has not appealed this conclusion. Therefore, this conclusion is the law of the case. *See Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009) ("Under the law-of-the-case doctrine, a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court.").

■ In any event, no person may interfere with a railroad's use of its right-of-way for railroad purposes, and the railroad may prohibit even the owner of the underlying fee from interfering with such a use. *See Faulkenberry v. Norfolk S. Ry. Co.*, 349 S.C. 318, 325, 563 S.E.2d 644, 648 (2002) (noting that although the owner of the fee underlying a railroad right-of-way may cross the railroad tracks, he may not do anything that would unreasonably interfere with the railroad's use of its easement); *Miller v. Seaboard Air Line Ry.*, 94 S.C. 105, 108, 77 S.E. 748, 749 (1913) (holding that the owner of the fee underlying a railroad's right-of-way had the right "to cross the railroad on his own land wherever he saw fit to do so," as long as he did not interfere with the right of the railroad to use its right-of-way for railroad purposes).[5]

---

5. *See also Atlanta & Charlotte Air–Line Ry. Co. v. Limestone–Globe Land Co.*, 109 S.C. 444, 451, 96 S.E. 188, 190 (1918) ("[T]he owner of the fee in a railroad right of way has the right to use so much thereof as is not in the actual use and occupancy of the railroad company, provided the use be not inconsistent with the claim of right of way for the railroad purposes."); 65 Am.Jur.2d *Railroads* § 62 (2012) ("A railroad company has the exclusive use of the surface of the land on which its right-of-way is located."); *id.* at § 63 ("The owner of the servient estate may use the

 "Railroad purposes" include any purpose that "furthers the business of the railroad." *Eldridge v. City of Greenwood*, 300 S.C. 369, 374, 388 S.E.2d 247, 250 (Ct.App. 1989) (citing *Sparrow v. Dixie Leaf Tobacco Co.*, 232 N.C. 589, 61 S.E.2d 700 (1950)). "The use ... must be reasonably necessary for or convenient to the operation of the railroad." *Sparrow*, 61 S.E.2d at 703. Further, a railroad cannot dispose of its right-of-way or use it in a way that will destroy or impair its ability to serve the public. *Eldridge*, 300 S.C. at 375, 388 S.E.2d at 250 (citation and quotation marks omitted); *see also Cayce Land Co. v. Guignard*, 135 S.C. 446, 550, 134 S.E. 1, 34 (1926) (holding that a railroad exceeded its authority as to its right-of-way by allowing a non-connecting spur track of a second railroad to pass under the first railroad's tracks).

 The railroad's use of its right-of-way may include the area underneath a trestle, which sits above the land on which the right-of-way is located. *See N.Y., New Haven & Hartford R.R. Co. v. Armstrong*, 92 Conn. 349, 102 A. 791, 796 (1918) (holding that an adjoining landowner had no right to run oil pipes through a railroad's right-of-way directly underneath its trestle, which was located above the surface of the land on which the railroad held its right-of-way); *id.* at 795 (holding that whatever space was reasonably required for the purposes of support and security of a piling for a platform on the southeasterly side of the railroad's tracks "must be presumed to have been included as a part of the occupation of the trestle"); *id.* ("No narrow rule should be adopted in passing upon the [railroad's] acceptance of a public grant, where the welfare of the public is involved.").

## II. Easement by Equitable Estoppel

Landowner asserts the circuit court erred in granting summary judgment to Railroad on the issue of easement by equitable estoppel. We disagree.

 To establish a claim for easement by equitable estoppel, the party claiming estoppel must show the following elements as to the party sought to be estopped: (1) conduct

land in a manner and for any purpose **that does not interfere with the full and free use of the railroad easement.**") (emphasis added).

that amounts to a false representation or concealment of material facts, or, at least, that is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those that the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 422, 633 S.E.2d 136, 142 (2006). These elements may be satisfied by the silence of the party to be estopped when that party has actual knowledge of the other party's prejudicial change in position. *See O'Cain v. O'Cain*, 322 S.C. 551, 557–59, 473 S.E.2d 460, 464–65 (Ct.App.1996) (holding that a landowner was equitably estopped from denying the use of a driveway on his property by an adjoining landowner when the first landowner remained silent during the second landowner's construction of the driveway and improvements to land to which the driveway led). As to the party claiming estoppel, the following elements must be shown: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance on the conduct of the party sought to be estopped; and (3) a prejudicial change in position. *Id.*

■ Here, when questioned about McCormick County's requirement for Landowner to obtain a written easement from Railroad, Paine stated the following: "Yes. And, in the meantime, we are out [of $30,000] or [$40,000] in engineering costs waiting to hear from [Railroad], who we cannot contact." Landowner argues: "By failing to communicate, the railroad has necessitated needless expense, delay, and frustration on our part." Landowner also argues Railroad misled it by "laying low and not saying anything—having any objection to our subdivision development until we ask for something and then no one will respond. We spent approximately $35,000.00 in engineering drawings and planning...." Landowner states that Railroad also misled it by sharing a gate with Landowner and by granting the utility easement through its right-of-way:

> [Railroad] sat by, allowed [Landowner] to spend large sums of money, had no objection to the construction of a cabin and electricity being provided to the cabin underneath its tracks, and then when [Landowner] requested legal ac-

knowledgement of its access rights—[Railroad] objected and acted in an entirely inconsistent manner.

Landowner asserts that its prejudicial change in position was "cutting timber, constructing a cabin, having power run, building a septic tank and on and on." However, Gayle admitted that Railroad never did anything or communicated anything to cause him to act in a way that would be detrimental to himself or to Landowner. Further, Gayle admitted that Railroad never made any false representations to him, and Paine admitted that Railroad did not induce him to do anything with regard to the Property. As to Landowner's expenses in building the cabin and installing a gate across the access road, even if Railroad had been on notice of Landowner's construction of the cabin, Paine and Gayle have continued to use the cabin for their personal enjoyment. Railroad has never denied *permission,* i.e., a mere license,[6] to Paine and Gayle to cross the right-of-way for these purposes. The record shows that Railroad had not taken any action adverse to Landowner's use of the road before Landowner filed this action.

Even after this action was filed, Railroad continued to allow Paine and Gayle to cross the right-of-way for their personal enjoyment of the Property through late March 2009. In his deposition, Gayle testified that just a few days before the deposition, which occurred on April 1, 2009, he was still able to cross the right-of-way. Further, Landowner indicated at oral argument that Railroad had not interfered with Landowner's current use of the right-of-way thus far. Because Paine and Gayle may still use the cabin for their personal enjoyment, incurring expenses to build the cabin, supply utilities to it, and install a gate did not amount to a prejudicial change in Landowner's position.

As to any expenses incurred for subdivision plans, nothing in the record shows that, prior to Landowner's filing of this

---

**6.** *See Main v. Thomason,* 342 S.C. 79, 92 n. 5, 535 S.E.2d 918, 924 n. 5 (2000), *overruled on other grounds, Byrd v. City of Hartsville,* 365 S.C. 650, 659, 620 S.E.2d 76, 81 (2005) (defining a license as "a personal, revocable, and unassignable privilege, conferred either by writing or parole, to do one or more acts on land without possessing any interest therein") (quoting *Briarcliffe Acres v. Briarcliffe Realty Co.,* 262 S.C. 599, 615, 206 S.E.2d 886, 894–95 (1974)).

action, Railroad was aware of either (1) Landowner's future plans to use the access road as a residential subdivision entrance, or (2) Landowner's agreement to pay an engineering firm $30,000 to $40,000 for development plans and sketches.[7] Although Paine's affidavit states that Railroad "specifically agreed" to SCE & G's utility easement for the cabin "and future development[,]" when pressed to attest to Railroad's awareness of Landowner's subdivision plans, Paine could not do so:

Q. But you can't say they knew you were going to build a subdivision, can you?

A. Well, you might say we—we relied on what we knew.

Further, Railroad's awareness of Landowner's building of the cabin and running electricity to it does not equate to an awareness of plans for a subdivision. Paine testified that Railroad's agreement to allow SCE & G to run electrical lines through its right-of-way to the Property "was on the presumption and the assumption that 12 residential lots would be built." However, he later admitted that he did not know what SCE & G communicated to Railroad when it obtained the utility easement. Nothing in the documents SCE & G submitted to Railroad for this purpose indicates that the electrical lines were to serve a residential subdivision with multiple homes. Likewise, nothing in the record indicates that a representative of Landowner communicated directly with Railroad regarding the utility easement. Paine admitted that Railroad had no knowledge that Landowner was accumulating engineering expenses while "waiting to hear" from Railroad.

Moreover, giving permission to one or two owners of the Property to cross the right-of-way hardly translates into consent for the access road to be used as a subdivision entrance. First, Railroad finds it necessary from time to time to block the access road so that its employees may perform repair work on the trestle, and Railroad asserts that Landowner's proposed development activities would interfere with this work. Second, Railroad argues the proposed development

---

7. Landowner cites the communications between its engineers and Railroad regarding permission to build a driveway under the trestle, which took place prior to Gayle's purchase of the Property. However, the documentation of these communications does not indicate any plans to develop a subdivision on the Property.

activities threaten the safety of its operations due to the limited clearance preventing safe passage of large vehicles, such as moving vans, cement trucks, and fire trucks.

Based on the foregoing circumstances, mere silence on the part of Railroad does not satisfy the elements required for equitable estoppel. *See Boyd,* 369 S.C. at 422, 633 S.E.2d at 142 (requiring (1) misleading conduct; (2) the misleading party's intent that the other party rely on the conduct; and (3) the misleading party's knowledge of the real facts); *cf. O'Cain,* 322 S.C. at 558, 473 S.E.2d at 464 (stating that the party to be estopped took action to deny an adjacent landowner's family access over a driveway only after he thought they were going to require removal of his hogs from their land). Therefore, the circuit court properly granted summary judgment to Railroad on Landowner's easement by estoppel claim.

## III. Prescriptive Easement

Landowner maintains that the circuit court erred in granting summary judgment to Railroad on Landowner's prescriptive easement claim. Landowner assigns error to the circuit court's failure to consider the use of Railroad's right-of-way by Landowner's predecessors in title. We agree that the circuit court's analysis did not address the use of the right-of-way by previous owners of the Property. However, Landowner failed to present evidence creating a genuine factual issue as to whether the use of the right-of-way was "adverse" or under a "claim of right," as explained below, for the requisite twenty years. Therefore, we affirm summary judgment in favor of Railroad on this claim. *See* Rule 220(c), SCACR (stating that the appellate court may affirm an order on any ground appearing in the Record on Appeal).

## A. Legal Elements

To establish an easement by prescription, a party must show the following: (1) the continued and uninterrupted use or enjoyment of a right for a full period of twenty years; (2) the identity of the thing enjoyed; and (3) that the use or enjoyment was adverse or under a claim of right. *Jones v. Daley,* 363 S.C. 310, 316, 609 S.E.2d 597, 599–600 (Ct.App. 2005). Additionally, a party claiming a prescriptive easement

under a claim of right must show a substantial belief that he had the right to use the property based on the totality of circumstances surrounding his use. *Matthews v. Dennis*, 365 S.C. 245, 250, 616 S.E.2d 437, 440 (Ct.App.2005). This "claim of right" is **"without recognition of the rights of the owner of the servient estate."** *Id.* n. 10 (quoting 25 Am.Jur.2d *Easements & Licenses* § 57 (2004)) (emphasis added).

> **[U]se by express or implied permission or license,** no matter how long continued, **cannot ripen into an easement by prescription,** since user as of right, as distinguished from permissive user, is lacking, if permissive in its inception, such permissive character will continue of the same nature, and no adverse user can arise, until there is a **distinct and positive assertion of a right hostile to the owner, and brought home to him.**

*Williamson v. Abbott,* 107 S.C. 397, 400–01, 93 S.E. 15, 16 (1917) (emphases added); *see also Atl. Coast Line R.R. Co. v. Epperson,* 85 S.C. 134, 140, 67 S.E. 235, 236 (1910) (holding that to establish a hostile use for purposes of adverse possession, there must be notice to the railroad of the adverse use, other than that arising from the mere erection of a substantial enclosure).

> **The asking and obtaining of permission,** whether from the tenant or owner of the servient estate, **stamps the character of the use as not having been adverse, or under claim of right,** and therefore as lacking that essential element which was necessary for it to ripen into a right by prescription.

*Williamson,* 107 S.C. at 400–01, 93 S.E. at 16 (emphasis added).

## B. Application to Landowner's Use

### 1. Twenty Years' Use

██ Landowner filed the present action on February 29, 2008. Therefore, to satisfy the first element of a prescriptive easement, Landowner must show continued and uninterrupted use of Railroad's right-of-way dating back to March 1, 1988. Landowner correctly argues that a party may "tack" the period of use of prior owners in order to satisfy the twenty-

year element of the prescriptive easement theory.[8] However, the use by the previous owners must also satisfy all of the elements of a prescriptive easement. 25 Am.Jur.2d *Easements & Licenses* § 63 (2004 & Supp.2012); *see also Babb v. Harrison,* 220 S.C. 20, 23, 66 S.E.2d 457, 458 (1951) (holding that the claimant carries the burden of proving that the use of the disputed area was adverse for the full period of twenty years in order to establish an easement by prescription). Our examination of the evidence in the present case yields no genuine factual issue as to whether the use of the right-of-way was "adverse" or "under a claim of right" for the requisite twenty years.

## 2. Permissive versus Adverse Use

██ Gayle's testimony, as well as Paine's testimony, indicated that after Landowner acquired the Property, Paine and Gayle had developed a good relationship with Railroad's security officer, Steve Purvis. Gayle admitted that Railroad, through Purvis, had given Landowner tacit permission to cross the right-of-way. On one occasion, Gayle had asked Purvis if "it would be better to access over the [railroad] track." Gayle testified that Purvis told him it would be "much more dangerous" for Gayle and Paine to access the Property by crossing over the track. Further, on behalf of Landowner, Gayle asked for, and received, Railroad's permission to install the gate on the access road. This permissive character of Landowner's use of the right-of-way is confirmed by Paine's affidavit. Although the conclusion of this affidavit states "we have requested legal acknowledgement of the existence of the right to access our property," the overall tenor of the affidavit is that Landowner's use was with Railroad's permission and in recognition of Railroad's rights. Therefore, the affidavit does not show that the use was adverse or under a claim of right. *See Matthews,* 365 S.C. at 250 n. 10, 616 S.E.2d at 440 n. 10 (characterizing a claim of right as "without recognition of the

---

8. *See* 25 Am.Jur.2d *Easements & Licenses* § 63 (2004 .& Supp.2012) ("The owner of a dominant estate generally need not show continued use by himself or herself for the entire prescriptive period, in order to establish an easement, but may tack the use[s] by his or her predecessors in title, where such successive owners are privies in estate and their possessions constitute one continuous possession.").

rights of the owner of the servient estate") (quoting 25 Am. Jur.2d *Easements & Licenses* § 57 (2004)); *Atl. Coast Line R.R. Co. v. Searson,* 137 S.C. 468, 489, 135 S.E. 567, 573 (1926) ("The right of way of a railroad, having been acquired for a public purpose, cannot be lost by a prescriptive use or adverse possession, unless by the erection of a permanent structure, accompanied by notice to the railroad company of an intention to claim adversely to its right." (quoting *Atlanta & Charlotte Air-Line Ry. Co. v. Limestone-Globe Land Co.,* 109 S.C. 444, 96 S.E. 188 (1918))).

Moreover, at oral argument, Landowner indicated that Gayle's reason for seeking permission to install the gate on the access road was to avoid interfering with Railroad's access. Landowner's implicit acknowledgement of Railroad's rights is inconsistent with a claim of right, which is "without recognition of the rights of the owner of the servient estate." *Matthews,* 365 S.C. at 250 n. 10, 616 S.E.2d at 440 n. 10 (quoting 25 Am.Jur.2d *Easements & Licenses* § 57 (2004)). Notably, Landowner arranged for Railroad and SCE & G to possess keys to the locks on the gate. The gate was actually beneficial to Railroad as it limited access to the trestle by trespassers.

In sum, Railroad gave permission to Landowner to use its right-of-way, and there is no probative evidence showing that after Railroad granted this permission, Landowner made any distinct and positive assertion of a right hostile to Railroad and "brought home" to Railroad. *See Williamson,* 107 S.C. at 400–01, 93 S.E. at 16 (holding that the permissive character of the use will continue of the same nature "until there is a distinct and positive assertion of a right hostile to the owner and brought home to him"); *id.* ("The asking and obtaining of permission ... stamps the character of the use as not having been adverse, or under claim of right, and therefore as lacking that essential element which was necessary for it to ripen into a right by prescription.").

 Even if Landowner's use could be characterized as adverse or under a claim of right, there is no probative evidence showing such an intent on the part of all previous owners of the Property dating back to March 1, 1988. Specifically, Landowner relies in part on the affidavit of Dr. Alexander Murphey, Jr., an owner of Furey Development, Inc.,

Wayne King's immediate predecessor in title. Dr. Murphey's affidavit indicates that his use of the right-of-way was without Railroad's permission and "with the understanding that [Railroad] refused to grant a right of way over and under its property." [9] However, an intent to claim adversely cannot be inferred from this statement because it does not show an intention to dispossess Railroad. *Cf. Brasington v. Williams*, 143 S.C. 223, 264, 141 S.E. 375, 388 (1927) ("Adverse possession is hostile ... and hostile possession ... **with intention to dispossess the owner.**" (citation omitted) (emphasis added)). Likewise, Dr. Murphey's affidavit does not show a "claim of right" to use the right-of-way because it shows that Dr. Murphey recognized the rights of Railroad. *See Matthews*, 365 S.C. at 250 n. 10, 616 S.E.2d at 440 n. 10 (characterizing a claim of right as without recognition of the rights of the owner of the servient estate) (quoting 25 Am.Jur.2d *Easements & Licenses* § 57 (2004)). Similarly, the inclusion of the access road in the development plans drawn by Dr. Murphey's engineers does not show a claim or right or an intent to claim adversely.

Because there is no genuine factual issue as to whether the use of the right-of-way was "adverse" or "under a claim of right" for the requisite twenty years, summary judgment on Landowner's prescriptive easement claim was proper.

## IV. Laches

Landowner asserts that the trial court erred in granting summary judgment to Railroad on the issue of laches. We disagree.

"Under the doctrine of laches, if a party, knowing his rights, does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights." *Judy v. Judy*, 383 S.C. 1, 7, 677 S.E.2d 213, 217 (Ct.App.2009), *aff'd*, 393 S.C. 160, 712 S.E.2d 408 (2011) (citation omitted). In

9. Incidentally, Furey's other owner, C.E. Carter, stated in his affidavit that he never accessed the Property by driving a motor vehicle on the access road under the trestle; rather, he accessed the Property by foot and "walked the [P]roperty on only a few occasions."

other words, laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done. *Hallums v. Hallums*, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988).

Here, assuming Landowner's assertion of laches is procedurally appropriate,[10] the record does not show any actions by Railroad that were inconsistent with its current position that Landowner has no legal right to cross the right-of-way. There is no evidence that Railroad was aware of Landowner's plans for a subdivision. Therefore, Railroad's *permission* for Landowner to use the access road in the manner it had been used could not have been construed as permission to use it as a subdivision entrance. Accordingly, any "delay" on the part of Railroad cannot be characterized as unreasonable. *Judy*, 383 S.C. at 7, 677 S.E.2d at 217 (characterizing laches as an unreasonable delay in asserting one's rights, causing his adversary to detrimentally change his position). Further, there is no indication that Railroad has revoked permission for Paine or Gayle to cross the right-of-way for their personal enjoyment of the Property and its prior improvements. Therefore, Landowner's expenses related to those improvements do not constitute a detrimental change in position. *Id.*

Based on the foregoing, the circuit court properly granted summary judgment to Railroad on the doctrine of laches.

## V. Easement by Necessity

Finally, Landowner contends that the circuit court erred in granting summary judgment to Railroad on the easement by necessity claim because access to the Property by the Savan-

---

10. In *Byars v. Cherokee Cnty.*, 237 S.C. 548, 557–59, 118 S.E.2d 324, 329–330 (1961), the **plaintiff** in a quiet title action successfully asserted the doctrine of laches and estoppel against Cherokee County; the supreme court affirmed the special referee's conclusion that Cherokee County was barred by laches and equitable estoppel to repudiate its sale of the plaintiff's property and the reconveyance of the land to the plaintiff. Notably, however, the supreme court's opinion still characterized laches as a **defense**. *Id.* at 559, 118 S.E.2d at 330. Therefore, even if a plaintiff may successfully assert laches against a defendant, it must be in response to some assertion by the defendant.

nah River is inadequate as a matter of law. However, the necessity for this type of easement must have existed at the time Railroad's predecessor in interest first obtained the right-of-way.

The elements of a claim for easement by necessity are: (1) unity of title, (2) severance of title, and (3) necessity. *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 418–19, 633 S.E.2d 136, 140–41 (2006). "To establish unity of title, the owner of the dominant estate must show that his land and that of the owner of the servient estate once belonged to the same person." *Kennedy v. Bedenbaugh*, 352 S.C. 56, 60, 572 S.E.2d 452, 454 (2002). Severance of title means that title to a larger tract was "severed" by conveyance of a part to the plaintiff's predecessor in title and of a part to the defendant's predecessor in title; "they both claim, from a common source, different parts of the integral tract, which necessarily assumes a severance." *Brasington*, 143 S.C. at 246, 141 S.E. at 382; *see also Turnbull v. Rivers*, 14 S.C.L. 131, 139 (Ct.App.1825) ("The necessity by which a person derives a right of way, is when one person sells to another lands inclosed on all sides by other lands. Here[,] the law imposes an obligation on the seller to allow the purchaser a right of way over his adjacent land.").

In cases involving the conveyance of a railroad right-of-way over the larger tract, as either an easement or a fee simple estate, the severance occurs at the time of the conveyance. *See Miller*, 94 S.C. at 109–10, 77 S.E. at 749–50 (Woods, J. concurring) (stating that when a railroad acquires a right-of-way, dividing one tract of land into two parts, the law "will hold that the intention was that the owner of the land would of necessity have the right of crossing, if a crossing could be made so as not to interfere materially" with the railroad's use of its right-of-way); *cf. Schwarz & Schwarz, LLC v. Caldwell County R.R. Co.*, 197 N.C.App. 609, 677 S.E.2d 546, 548 (2009) (holding that a corporate landowner, who claimed an easement by necessity to cross over a railroad right-of-way easement separating the landowner's property from a public road, had not established that the necessity for the crossing arose out of its predecessor's conveyance of the right-of-way in 1902); *id.* at 548–49 (highlighting evidence showing that until the 1940s, when a railroad crossing was constructed during the proper-

ty's development, the property was a meadow "possibly used as a berry patch").[11]

"The necessity required for easement by necessity must be actual, real, and reasonable as distinguished from convenient, but need not be absolute and irresistible." *Boyd,* 369 S.C. at 420, 633 S.E.2d at 141. "South Carolina requires only 'reasonable necessity' to imply an easement: while the owner of the servient estate must prove more than convenience, he need not show the [easement] is absolutely necessary." *Graham v. Causey,* 284 S.C. 339, 341, 326 S.E.2d 412, 414 (Ct.App.1985), *disapproved of on other grounds by Jowers v. Hornsby,* 292 S.C. 549, 357 S.E.2d 710 (1987) (citations omitted). "The necessity element of easement by necessity **must exist at the time of the severance** and the party claiming the right to an easement **must not create the necessity when it would not otherwise exist.**" *Boyd,* 369 S.C. at 420, 633 S.E.2d at 141 (citations omitted) (emphasis added). This is so because it is the severance that creates the necessity for an easement and, thus, allows the law to impute to a landowner a right to cross an adjacent parcel. *See Turnbull,* 14 S.C.L. at 139 ("The necessity by which a person derives a right of way, is when one person sells to another lands inclosed on all sides by other lands. Here[,] the law imposes an obligation on the seller to allow the purchaser a right of way over his adjacent land.").

Further, "reasonable access to a road over navigable water will prevent the implication of a way of necessity, even though a way by land may be more convenient." 25 Am.Jur.2d

---

11. *See also Town of Bedford v. Cerasuolo,* 62 Mass.App.Ct. 73, 818 N.E.2d 561, 567 (2004) (holding that a landowner's need to establish a way to access the southern parcel of his tract arose upon his conveyance of a strip of land to a railroad in 1873, which had the effect of dividing his tract and leaving the tract's southern parcel landlocked); *State v. Beeson,* 232 S.W.3d 265, 273–74 (Tex.App.2007) (noting that landowners, who sought an easement by necessity to cross a railroad right-of-way, did not have any evidence of the manner in which their predecessors in interest used a tract of land at the time that the right-of-way, which severed the tract, came into existence in 1893); *id.* at 274 (stating that the landowners merely relied on the general allegation that their predecessors would have needed to cross the right-of-way to access the northern strip of their property that was cut off from the remainder of their tract by the right-of-way).

*Easements & Licenses* § 38 (2004), *cited with approval in Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism,* 377 S.C. 86, 97 n. 4, 659 S.E.2d 151, 157 n. 4 (2008); *but see Graham,* 284 S.C. 339, 342, 326 S.E.2d 412, 414 (Ct.App.1985), *disapproved of on other grounds by Jowers v. Hornsby,* 292 S.C. 549, 357 S.E.2d 710 (1987) (holding that because the plaintiff's land was bordered by a lake and property belonging to others, the requirement that the necessity "must have existed at the time of the grant" was satisfied because "ever since [the plaintiff's] tract was severed [in the 1960s,] an easement . . . has been necessary" (citations omitted)).

Here, Landowner argues that precluding an easement by necessity when the property at issue can be accessed by navigable waters is "an antiquated notion." In support of this argument, Landowner cites an opinion issued by the Supreme Court of Arkansas, *Attaway v. Davis,* 288 Ark. 478, 707 S.W.2d 302 (1986).[12] In response to an argument that an easement by necessity should not be granted in light of the dominant estate's frontage on a navigable water course, the court stated that the necessity need only be reasonable, not absolute. *Id.* at 303. The court further stated, "Now that travel even for short distances is almost always by motor vehicle, it is not reasonable to require the appellee and those wishing to visit her to make the trip by boat." *Id.*

While Landowner's argument is appealing, it overlooks the critical aspect of timing. Although South Carolina requires only "reasonable necessity" to imply an easement,[13] the reasonable necessity must have existed **at the time of the severance.** *Boyd,* 369 S.C. at 420, 633 S.E.2d at 141. Here, the severance occurred in 1878 when Railroad's predecessor in interest obtained its right-of-way over a larger tract of land that included the 15.6 acres now owned by Landowner; the right-of-way severed the larger tract, leaving access to the 15.6 acres only by the Savannah River. *Cf. Graham,* 284 S.C.

12. Landowner also cites 25 Am.Jur.2d *Easements & Licenses* § 38 (2004) for the proposition that there is a trend in the courts toward a more liberal interpretation of easements by necessity despite access by water.

13. *See Graham,* 284 S.C. at 341, 326 S.E.2d at 414 (requiring only "reasonable necessity").

at 340, 326 S.E.2d at 413 (indicating that the severance creating the necessity occurred in the 1960s).

In 1878, it would not have been unreasonable or antiquated to require a landowner to access his property by water in the absence of evidence of adverse environmental conditions. *Cf. Brasington,* 143 S.C. at 250, 141 S.E. at 384 (recounting the plaintiff's testimony regarding the conditions of a river and its banks at the location of the plaintiff's property and the adverse effect of these conditions on the ability to access the property by the river). Landowner did not present any evidence of environmental conditions in 1878 that would prevent reasonable access to the Property by the Savannah River. Therefore, we are constrained to affirm the circuit court's grant of summary judgment to Railroad on Landowner's easement by necessity claim.

We take this opportunity to emphasize our previous conclusion that regardless of the interest a person has in a railroad right-of-way, whether it is the underlying fee, some type of an easement, or a mere license to cross the right-of-way, that person may not interfere with the railroad's use of its right-of-way for the purpose of furthering its business. *See Faulkenberry v. Norfolk S. Ry. Co.,* 349 S.C. 318, 325, 563 S.E.2d 644, 648 (2002) (noting that although the owner of the fee underlying a railroad right-of-way may cross the railroad tracks, he may not do anything that would unreasonably interfere with the railroad's use of its easement); *Miller v. Seaboard Air Line Ry.,* 94 S.C. 105, 77 S.E. 748, 749 (1913) (holding that the owner of the fee underlying a railroad's right-of-way had "the right to cross the railroad on his own land wherever he saw fit to do so, provided he did not interfere with the right of the railroad to use its right of way for railroad purposes"); *Eldridge v. City of Greenwood,* 300 S.C. 369, 374, 388 S.E.2d 247, 250 (Ct.App.1989) (indicating that "railroad purposes" include any purpose that furthers the business of the railroad.).

## CONCLUSION

Accordingly, the circuit court's order granting summary judgment to Railroad is

AFFIRMED.[14]

HUFF and THOMAS, JJ., concur.

---

14. We decline to address Landowner's assignments of error as to the denial of its summary judgment motion. *See Olson v. Faculty House of Carolina, Inc.,* 354 S.C. 161, 167, 580 S.E.2d 440, 443 (2003) (quoting *Ballenger v. Bowen,* 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994)) (holding that the denial of summary judgment is not reviewable even in an appeal from final judgment).