688 S.E.2d 852

**Wendy McDANIEL, formerly known as Wendy Sue Kendrick, Respondent,**

**v.**

**Carolyn KENDRICK, Appellant.**

**No. 4643.**

Court of Appeals of South Carolina.

Heard Oct. 6, 2009.

Decided Dec. 31, 2009.

Rehearing Denied Feb. 18, 2010.

438

Patrick John Frawley, of Lexington, for Appellant.

James Poag, Jr., of West Columbia, for Respondent.

KONDUROS, J.

Carolyn Kendrick appeals the trial court's finding she failed to establish the requisite elements of adverse possession or a constructive trust. We affirm.

## PROCEDURAL BACKGROUND/FACTS

Robert Kendrick and Carolyn married in 1986, and each party brought children from their former marriages into the family. Prior to the marriage, Robert owned a five-acre parcel of land in Lexington County (the property) titled solely in his name.[1] Carolyn purchased a double-wide trailer to place on the property and this served as the marital home for the couple and their children. Robert and Carolyn made

---

1. Robert gained sole title to the property by paying his first wife $2,500 to buy her interest in the property as part of their divorce settlement. Robert and his first wife had purchased the land in 1979.

monthly mortgage payments on the property from marital funds and eventually satisfied the mortgage on the land with proceeds from the sale of Carolyn's previous home.

In the fall of 1988, Robert and Carolyn separated. Robert and his children moved out of the marital residence and into a home in West Columbia. His daughter, Wendy, a junior at Pelion High School, was informed she could no longer participate in sports or attend school there because of her relocation. In response, Robert deeded the property to Wendy in 1989 for five dollars, love and affection. Wendy continued at Pelion High School and graduated in 1990.

In 1990, after a heart-related health scare, Robert created a document that appears to have testamentary intent but does not meet the formalities required to create a will.[2] The document states:

On the 26th day of November, 1990, as I make these request [sic] of the persons I love to be carried out upon my death, I am of sound mind and fully capable of making these decisions.

Concerning a parcel of land which I owned until January of 1989 and at that time sold the land to my daughter, Wendy Sue Kendrick[,] for the sum of $5.00 and love and consideration, I want my wife, Carolyn J. Kendrick[,] to be able to live on the land in her present dwelling without rent or any monetary consideration for as long as she wants to. If she leaves that land to live some place else, she will give up all future rights to live there. The land is to remain in Wendy Sue Kendrick's name. There is to be no other dwelling, either temporary or permanent[,] put on the land. My daughter fully understands this and has agreed to abide by my wishes.

Robert and Carolyn continued to live separate and apart but remained married and involved in each other's lives. Around 2002, Robert developed Alzheimer's disease and his sister began managing his affairs and caring for him. In March 2005, Wendy, who had little to no contact with Carolyn through the years, requested Carolyn vacate the property or buy it from her. Carolyn refused and filed a divorce action apparently seeking to assert a claim to the property through

2. The parties do not appeal the admissibility of this document into evidence.

the apportionment of marital assets. However, Carolyn abandoned that action when Wendy filed a suit in circuit court and asserted her interest through counterclaims. Wendy's complaint sought to remove Carolyn from the property or in the alternative requested reasonable rental payments. Carolyn answered and alleged ownership in the property by adverse possession and constructive trust. She further requested the value of improvements to the property in the event she was required to vacate.[3]

The trial court ruled Carolyn failed to prove adverse possession of the property because she had not demonstrated the required element of hostility. The trial court further found Carolyn did not establish a constructive trust because she presented no evidence of fraud. Additionally, Carolyn's request for the value of improvements to the property was denied. This appeal followed.

## STANDARD OF REVIEW

An adverse possession claim is an action at law. *Miller v. Leaird,* 307 S.C. 56, 61, 413 S.E.2d 841, 843 (1992). In an action at law tried without a jury, this court will not disturb the trial court's findings unless they are wholly unsupported by the record or controlled by an error of law. *Coakley v. Horace Mann Ins. Co.,* 376 S.C. 2, 6, 656 S.E.2d 17, 19 (2007). An action to declare a constructive trust is an action in equity. *Macaulay v. Wachovia Bank of S.C.,* 351 S.C. 287, 294, 569 S.E.2d 371, 375 (Ct.App.2002). In actions at equity, the appellate court may find facts in accordance with its own view of the evidence. *Id.* at 294, 569 S.E.2d at 375. When legal and equitable actions are maintained in one suit, each retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal. *Wright v. Craft,* 372 S.C. 1, 17–18, 640 S.E.2d 486, 495 (Ct.App.2006).

## LAW/ANALYSIS

### I. Adverse Possession

Carolyn contends the trial court erred in finding she was required to establish the element of hostility when claiming adverse possession of an entire tract of land. She maintains

---

3. Robert died in January 2007, prior to the trial of this case.

the trial court further erred in concluding her possession was not sufficiently hostile. We disagree.

In order to establish a claim of adverse possession, the claimant must prove by clear and convincing evidence his possession of the subject property was continuous, hostile, actual, open, notorious, and exclusive for the statutory period. *All Saints Parish, Waccamaw v. Protestant Episcopal Church in the Diocese of S.C.*, 358 S.C. 209, 229, 595 S.E.2d 253, 265 (Ct.App.2004). In *Knox v. Bogan*, 322 S.C. 64, 66, 472 S.E.2d 43, 45 (1996), Knox claimed ownership of property designated as the southern tract through adverse possession. An old fence separated the southern tract from Bogan's property. *Id.* at 69, 472 S.E.2d at 47. Testimony showed the Knox family had occupied the southern tract up to the fence line for more than seventy years under the belief the fence line was the boundary between their land and Bogan's. *Id.* at 69, 472 S.E.2d at 46–47. The supreme court, addressing the requirement of hostility, stated:

> The only issue is whether the Knoxes' possession was sufficiently hostile. As we read *Perry v. Heirs at Law* [316 S.C. 224, 449 S.E.2d 250 (1994) ] and *Wigfall v. Fobbs* [295 S.C. 59, 367 S.E.2d 156 (1988) ] either there is no longer a hostility requirement where the claim is to an entire tract, or South Carolina does in fact follow the majority view that the mental attitude of the possessor of land is immaterial. Under the majority view an actual, exclusive, open and notorious possession *without the consent* of the title owner is both wrongful and adverse and will ripen into perfect title in the usual way when the statute of limitations has run. The majority view represents the most practical approach to the hostility requirement of adverse possession and is in keeping with the national trend of authority.

*Id.* at 70–71, 472 S.E.2d at 47 (emphasis added) (citations omitted).

The supreme court did not, as Carolyn argues, eliminate the hostility requirement when a party claims adverse possession of an entire tract of land. The court simply explained the hostility requirement is not necessarily predicated upon the claimant's conscience intention to possess the property against the true owner's wishes. A claimant may establish adverse possession if he occupies the property under

the mistaken belief that it belongs to him. In any case, *Knox* makes clear the claimant must be on the property without the consent of the title owner.

■ Turning to the case before us, Carolyn testified "my understanding was that it was my home and there was nothing that I needed to do." When asked why she did not seek Wendy's permission to cut down some trees on the property she responded, "I didn't consider her the owner or the actual occupant of [the property]. I wouldn't have thought to ask her." This testimony suggests Carolyn believed she had some right of ownership in the property. However, she also testified she knew the property was titled solely in Robert's name when they married and was titled solely in Wendy's name upon the conveyance in 1989. Furthermore, Carolyn testified she never paid taxes on the property, although she did pay taxes on the mobile home.

Additionally, Wendy testified she did not really object to allowing Carolyn to live on the property while Robert was alive although she never gave Carolyn express permission to stay there. Moreover, Wendy was aware of Carolyn's presence on the property from the time of the conveyance and did not request Carolyn vacate the premises until March of 2005.

At best, the evidence conflicts as to any mistaken belief Carolyn may have had that the property belonged to her. The record contains ample evidence to support finding Wendy gave her tacit permission for Carolyn to occupy the property at least until October of 2005. We agree with the trial court such evidence does not satisfy the requirement of hostility by clear and convincing evidence.

Instead, this case is more analogous to those wherein a party entered land with permission of the owner and then claimed adverse possession at a later point. *See Davis v. Monteith,* 289 S.C. 176, 180, 345 S.E.2d 724, 726 (1986) (finding occupation of property with owner's tacit permission was not hostile although such possession may have become hostile when claimant remained on property after being told to vacate); *Frady v. Ivester,* 118 S.C. 195, 205, 110 S.E. 135, 138 (1921) ("The defendant's entry into possession was permissive, and, as she had a duty to perform, she could not hold adversely to the rights of the mortgagors until she either surrendered the possession or gave notice of an adverse

possession."); *Young v. Nix,* 286 S.C. 134, 136, 332 S.E.2d 773, 774 (Ct.App.1985) (holding claimant who had farmed tract of land for more than forty years with permission of property owner's widower did not establish claim of adverse possession without a "clear and positive disclaimer of the title under which entry was made"). While a party cannot adversely possess property used with permission, a party may begin to satisfy the requirement of hostility upon a clear disclaimer of the owner's title. *All Saints Parish, Waccamaw,* 358 S.C. at 233, 595 S.E.2d at 266–67.

In this case, Carolyn entered the property with Robert's permission and remained there for the next nineteen years with Wendy's tacit permission. Not until 2005 did Wendy request Carolyn vacate or purchase the property. Carolyn's refusal at that time may have made her subsequent occupation hostile. However, Carolyn clearly had not satisfied the statutory period for adverse possession when Wendy commenced her lawsuit just a few months later. Accordingly, the trial court did not err in finding Carolyn was required to establish the element of hostility and that she failed to do so by clear and convincing evidence.

## II. Constructive Trust

Carolyn argues the trial court erred in finding she failed to establish the required element of fraud to prove her entitlement to a constructive trust. We disagree.

The law may impose a constructive trust when a party obtains a benefit that "does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it." *SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 500, 392 S.E.2d 789, 793–94 (1990). "A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution. Fraud is an essential element, although it need not be actual fraud." *Dye v. Gainey,* 320 S.C. 65, 68, 463 S.E.2d 97, 99 (Ct.App.1995) (citing *Lollis v. Lollis,* 291 S.C. 525, 529, 354 S.E.2d 559, 561 (1987)). The evidence necessary to support the imposition of a constructive trust must be clear and convincing. *SSI Med. Servs., Inc.,* 301 S.C. at 500, 392 S.E.2d at 794.

█ The trial court found Carolyn presented no clear and convincing evidence to demonstrate the transfer from Robert to Wendy was fraudulent. Carolyn seems to base her fraud argument on the belief she acquired an interest in the property because it served as the marital home for a period of time and she made monetary contributions toward its purchase. Carolyn's contention invites us to consider whether she gained an interest in the property through transmutation or some equitable means during the parties' marriage. However, she abandoned her divorce action in which any transmutation or special equity issues could have been directly determined. *See* S.C. Code Ann. § 20–3–610 (Supp.2008) (special equity or ownership rights in property are subject to apportionment between spouses by the family courts of this State upon the commencement of marital litigation). Therefore, we will not address those issues in the case presented on appeal.

█ The record reveals no other evidence the transfer from Robert to Wendy was fraudulent. Although Carolyn is left in an unfortunate position, we cannot conclude she established by clear and convincing evidence the imposition of a constructive trust was warranted.[4]

## CONCLUSION

Because we find Carolyn failed to meet the burdens of proof required to establish adverse possession or entitlement to a constructive trust, the ruling of the trial court is

**AFFIRMED.**

HEARN, C.J., and LOCKEMY, J., concur.

---

4. A constructive trust may also be established based on the violation of a fiduciary duty. *See Chapman v. Citizens & So. Nat'l Bank of S.C.,* 302 S.C. 469, 478–79, 395 S.E.2d 446, 452 (Ct.App.1990) (finding a constructive trust in favor of C when A makes a will leaving property to B in reliance on B's promise to hold the property for C's benefit). According to his 1990 letter, Robert wished for Carolyn to live on the property. However, the record contains no clear and convincing evidence to demonstrate Robert's conveyance was made in reliance on representations by Wendy to hold the property for Carolyn's benefit. The 1990 letter and the fee simple conveyance were not contemporaneous. Any wishes Robert expressed or agreement he believed Wendy made after the transfer do not directly bear on his reliance because the transfer had already been made.