# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

W. H. Bundy, Jr., Respondent,

v.

Bobby Brent Shirley, Petitioner.

Appellate Case No. 2013-001263

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Kershaw County
Roderick Murchison Todd, Jr., Special Referee

---

Opinion No. 27520
Heard March 3, 2015 – Filed May 6, 2015

---

## AFFIRMED AS MODIFIED

---

John W. Wells, of Baxley Pratt & Wells, P.A., of Lugoff,
for Petitioner.

Michael Brent McDonald, of Smith Bundy Bybee &
Barnett, P.C., of Mount Pleasant, for Respondent.

---

**JUSTICE BEATTY:** In this declaratory judgment action, W. H. Bundy, Jr.
sought a determination of whether Bobby Brent Shirley established a prescriptive
easement over a road on rural property owned by Bundy. The special referee
found Shirley was entitled to the easement. The Court of Appeals reversed. *Bundy*

*v. Shirley*, Op. No. 2013-UP-153 (S.C. Ct. App. filed May 8, 2013). This Court granted Shirley's petition for a writ of certiorari to review the decision of the Court of Appeals. We affirm as modified.

## I.    Factual / Procedural History

As stipulated by the parties, the Bundy property traced back to a plat prepared on September 26, 1960. The plat depicts a continuous dotted line that includes Saxon Road, which is maintained by Sumter County and Kershaw County, and the disputed dirt road leading to the Bundy property. In 1968, Sumter County and Kershaw County began maintaining that portion of Saxon Road in their respective counties. The maintenance extended from the Sumter-Kershaw County line to the Miller property, which is the last occupied residence on Saxon Road.

Although there were multiple predecessors-in-title, Bundy ultimately purchased his seven tracts of rural property in Kershaw County on March 14, 2003 from Bowater Timber 1, L.L.C ("Bowater"). Throughout Bowater's ownership, the South Carolina Department of Natural Resources ("SCDNR") had a legal interest in the property as it was enrolled in the Wildlife Management Area Program between 1985 and 2003. This program allowed the public to access all portions of the property subject to the program's rules and regulations, which included the requirement that a person seeking to hunt on the property procure a permit. During the off-season, Bowater strung a locked cable on two posts at the entrance of the property. On December 22, 2003, Bundy conveyed a conservation easement on the property to Congaree Land Trust, which prevents development and subdivision of the property in the future and allows Bundy to plant pine trees.

The thirty-seven acre tract of land known as the Shirley property was acquired by Shirley's parents on May 10, 1985. Shirley's parents transferred the property to Shirley on February 21, 2005. While there were several predecessors-in-title, the pertinent ownership relied on by Shirley was the Bennett family ownership between December 19, 1947 and April 29, 1969. As stipulated by the parties, Elijah Bennett and his family used Saxon Road and the disputed road as their sole access to the Shirley property. Bennett farmed the land from 1948 until 1957 and rented a portion of the property to the Miller family during the 1960s.

Shirley, whose property is landlocked by surrounding owners, used the disputed road on Bundy's property from 1985 to 2004 for ingress and egress to his property. Throughout the time period that the property was leased to SCDNR,

Shirley used a key, which was given to him and his father by a SCDNR game warden, to unlock the gate.

In early 2004, shortly after Bundy purchased his property, Shirley received permission from Bundy to erect a gate over the disputed road in an effort to limit the public from using the surrounding property to dump trash. The gate was located at the same location as the Bowater cable. Shortly thereafter, Bundy hired a company to clear a portion of his property so that he could plant pine trees. Shirley became upset when a logging truck, which was owned by the company hired by Bundy, blocked access to his property. According to Bundy, Shirley called him and threatened him with violence regarding the incident. As a result of the threat, Bundy called Shirley on September 12, 2005 and instructed him to take down the gate and told him to stop using the disputed road to access his property. In response, Shirley yelled at Bundy and threatened him again with violence. Shirley testified that he believed he had a right to use the road because he thought it was a continuation of Saxon Road.

On March 24, 2009, Bundy filed a declaratory judgment action seeking a determination of whether Shirley had a prescriptive easement over the disputed road. Alternatively, if the court ruled that Shirley was entitled to the easement, Bundy sought a determination regarding the type of easement and the rights and duties of the easement holder, including whether the easement was assignable or transferable. Shirley filed an Answer and Counterclaim in which he sought a declaration that the disputed road was public or, alternatively, that he had a private, permanent easement. In his Reply, Bundy alleged several affirmative defenses to Shirley's counterclaims, including that Shirley was barred from recovery based on the equitable doctrines of estoppel and unclean hands and that Shirley's use of the disputed road was permissive.

Following a two-day trial, the special referee ruled that Shirley was entitled to an easement, which measured eight feet in width, across Bundy's property. Based on the stipulations of the parties, the testimony presented, and the exhibits, the special referee concluded that Shirley proved by a preponderance of the evidence that the Bennett family used the disputed roadway between 1947 and 1969 "continuously" and in a "manner that was adverse to the interests of the owners at that time of the tract now owned by [Bundy]." Having concluded that Shirley established a prescriptive easement during the Bennett ownership period, the special referee found it was "unnecessary to establish a prescriptive easement during the Shirley ownership period." However, the special referee concluded, as a

matter of law, that Shirley had proven that "his parents and he used the disputed road continuously for a period of twenty (20) years."

The special referee also found that Shirley's "continued use of the clearly identified disputed road under a claim of right establishes a prescriptive easement during the Shirley ownership period without the need to show that the use was adverse." Citing *Revis v. Barrett*,[1] the special referee stated "[p]ermission does not defeat an easement by prescription based on claim of right." The special referee also rejected Bundy's evidence that Shirley's use was permissive. Referencing Shirley's "violent outburst" toward Bundy, the special referee concluded that Shirley's use of the disputed road was adverse and hostile.

The special referee further determined that Sumter County and Kershaw County derived their right to maintain a portion of Saxon Road from a prescriptive easement because there was no evidence presented that either county obtained any right-of-way deeds. Because the counties maintained a portion of Saxon Road, the special referee found that Saxon Road is a public road and, therefore, "the disputed road in this case is unmistakably a portion of Saxon Road."

Subsequently, Bundy filed a timely motion for reconsideration in which he alleged, *inter alia*, the special referee erred in finding that Saxon Road is a public road and ruling as a matter of law that permissive use does not defeat a claim of a prescriptive easement. The special referee affirmed the grant of a prescriptive easement to Shirley. However, he granted Bundy's motion in part as the special referee reversed his ruling on Shirley's claim of an easement based on a public dedication theory. Bundy appealed the special referee's orders to the Court of Appeals.

The Court of Appeals reversed the special referee's decision, finding Shirley did not establish that his use of the disputed road was adverse or under a claim of right for twenty years. *Bundy v. Shirley*, Op. No. 2013-UP-153 (S.C. Ct. App. filed May 8, 2013). In so ruling, the court initially held the special referee erred as a matter of law in concluding that permission "does not defeat an easement by prescription based on a claim of right." *Id.*, slip op. at 2. The court found the

---

[1] *See Revis v. Barrett*, 321 S.C. 206, 467 S.E.2d 460 (Ct. App. 1996) (affirming master's ruling that plaintiff was entitled to a prescriptive easement as there was ample evidence to support the master's finding that plaintiff's belief about her right to use the road flowed from a "claim of right" not from the defendant's grant of permission).

special referee's conclusion was contrary to established law, which states that permission defeats a claim to a prescriptive easement because the use of the disputed property is no longer deemed adverse or under claim of right. *Id*., slip op. at 2-3 (citing *Paine Gayle Props., L.L.C. v. CSX Transp., Inc.*, 400 S.C. 568, 585-86, 735 S.E.2d 528, 537-38 (Ct. App. 2012)).

With this principle in mind, the court noted that the parties stipulated: (1) the property Shirley now owns was transferred to Shirley's parents on May 10, 1985; and (2) in 2004, Shirley put up a gate on the disputed road with the permission of Bundy. *Id.*, slip op. at 2. Based on these stipulations, the court concluded that Bundy's grant of permission for Shirley to build the gate defeated a claim of right or adverse use of the disputed road. *Id.*, slip op. at 2-3. Additionally, the court ruled the special referee erred in finding that because Shirley established a "prescriptive easement during the Bennett ownership period, it [was] unnecessary to establish a prescriptive easement during the Shirley ownership period." *Id.*, slip op. at 3.

In order to utilize the Bennett family's prescriptive use of the disputed road, the court found Shirley was required to offer evidence that the disputed road continued to be used under a claim of right or in an adverse manner during the time period between the Bennett family's use and the Shirley family's use. *Id.* The court determined Shirley failed to present evidence that the use of the disputed road was adverse or under claim of right between 1968[2] and 1985, the time period between the Bennett family's ownership and the Shirley family's ownership. *Id.* Consequently, the court concluded that even if the special referee was correct that the Bennett family had a prescriptive easement over the disputed road, Shirley was unable able to tack the Bennett family's use to establish his prescriptive easement claim. *Id.* Accordingly, the court found the special referee erred by granting Shirley a prescriptive easement. *Id.* Finding this ruling dispositive of the appeal, the court declined to address Bundy's remaining arguments. *Id.*

Following the filing of the court's opinion on April 10, 2013, Shirley timely filed a petition for rehearing and a reply to Bundy's return to the petition for rehearing. Before reviewing Shirley's reply that was filed the afternoon of May 8, 2013, the court denied the petition for rehearing, withdrew the original opinion, and filed a substituted opinion on May 8, 2013. However, in an order dated May 20, 2013, the court stated that it had reviewed Shirley's reply but declined to alter

---

[2] The record reflects the Bennett family owned their property from 1947 to 1969.

its decision denying the petition for rehearing or substituting the opinion. This Court granted Shirley's petition for a writ of certiorari to review the decision of the Court of Appeals.

## II.    Standard of Review

Declaratory judgments are neither legal nor equitable. *Felts v. Richland Cnty.,* 303 S.C. 354, 400 S.E.2d 781 (1991); *Wiedemann v. Town of Hilton Head Island,* 344 S.C. 233, 542 S.E.2d 752 (Ct. App. 2001). The standard of review for a declaratory judgment action is, therefore, determined by the nature of the underlying issue. *Doe v. S. C. Med. Malpractice Liab. Joint Underwriting Ass'n,* 347 S.C. 642, 557 S.E.2d 670 (2001); *Wiedemann,* 344 S.C. at 236, 542 S.E.2d at 753; *see Travelers Indem. Co. v. Auto World of Orangeburg, Inc.,* 334 S.C. 137, 511 S.E.2d 692 (Ct. App. 1999) (recognizing that a suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of underlying issue).

The determination of the existence of an easement is a question of fact in a law action. *Jowers v. Hornsby*, 292 S.C. 549, 357 S.E.2d 710 (1987). The instant case was referred to a special referee for entry of a final judgment. Accordingly, our scope of review is limited to correction of errors of law, and we will not disturb the special referee's factual findings that have some evidentiary support. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). However, the determination of the extent of a grant of an easement is an action in equity. *Inlet Harbour v. S. C. Dep't of Parks, Recreation & Tourism*, 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008). Thus, we may take our own view of the evidence on the latter issue. *Id.*

## III.    Discussion

## A.    Violation of Due Process

As an initial matter, Shirley asserts the Court of Appeals violated his right to procedural due process under the Fourteenth Amendment to the United States Constitution[3] by denying his petition for rehearing prior to reviewing his timely reply to Bundy's return to his petition for rehearing. He claims the remedy for this due process violation is for this Court to grant certiorari to review the decision of the Court of Appeals.

---

[3]  U.S. Const. amend. XIV.

We find this issue is moot as Shirley received the requested relief when this Court granted his petition for a writ of certiorari. *See Curtis v. State,* 345 S.C. 557, 549 S.E.2d 591 (2001) (stating that a case becomes moot when judgment, if rendered, will have no practical legal effect upon existing controversy); *Waters v. S. C. Land Res. Conservation Comm'n,* 321 S.C. 219, 467 S.E.2d 913 (1996) (recognizing that a justiciable controversy is a real and substantial controversy that is ripe and appropriate for judicial determination, as opposed to a dispute or difference of contingent, hypothetical or abstract character). However, even assuming the issue is proper for the Court's consideration, we find it is without merit.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment of the United States Constitution." *Kurschner v. City of Camden Planning Comm'n*, 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008). "The fundamental requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review." *Id.* "Due process is flexible and calls for such procedural protections as the particular situation demands." *S. C. Dep't of Soc. Servs. v. Wilson,* 352 S.C. 445, 452, 574 S.E.2d 730, 733 (2002) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Before reviewing Shirley's reply that was filed the afternoon of May 8, 2013, the Court of Appeals denied the petition for rehearing, withdrew the original opinion, and filed a substituted opinion on May 8, 2013. After recognizing the error, the court reviewed Shirley's reply and issued an order on May 20, 2013 stating that it had reviewed Shirley's reply but declined to alter its decision denying the petition for rehearing and substituting the opinion. We find that Shirley's right to due process was not violated because he was afforded an opportunity to be heard and received judicial review of his reply.

## B.     Prescriptive Easement

As to the merits of the Court of Appeals' decision, Shirley contends the court erred in reversing the special referee's grant of a prescriptive easement. Specifically, Shirley claims the Court of Appeals erred in ruling as a matter of law that Bundy's grant of permission to build a gate on the disputed road defeated his claim for a prescriptive easement. Additionally, Shirley avers the Court of Appeals erred by requiring him to prove a period of use that was adverse or under

claim of right in excess of the requisite twenty-year period for a prescriptive easement.

### a. Standard of Proof

An easement is a right given to a person to use the land of another for a specific purpose. *Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 232, 662 S.E.2d 452, 455 (Ct. App. 2008). "An easement may arise in three ways: (1) by grant; (2) from necessity; and (3) by prescription." *Kelley v. Snyder*, 396 S.C. 564, 572, 722 S.E.2d 813, 817 (Ct. App. 2012). Here, Shirley sought an easement by prescription. "A prescriptive easement is not implied by law but is established by the conduct of the dominant tenement owner." *Boyd v. BellSouth Tel. Tel. Co.*, 369 S.C. 410, 419, 633 S.E.2d 136, 141 (2006). To establish a prescriptive easement, one must show: (1) continued and uninterrupted use or enjoyment of the right for a period of twenty years; (2) the identity of the thing enjoyed; and (3) use or enjoyment which is either adverse or under claim of right. *Pittman v. Lowther*, 363 S.C. 47, 50, 610 S.E.2d 479, 480 (2005).

Although the elements of a prescriptive easement are well-established, the standard of proof as to these elements has given rise to confusion among the bench and bar. This confusion is understandable as the majority of the prescriptive easement cases in this state do not specifically enunciate the standard. Instead, our state cases: (1) simply outline the elements of a prescriptive easement and identify the claimant as having the burden of proving these elements; or (2) analogize the establishment of a prescriptive easement to that of adverse possession, which requires clear and convincing proof. *See, e.g.*, *Morrow v. Dyches*, 328 S.C. 522, 527, 492 S.E.2d 420, 423 (Ct. App. 1997) ("The party claiming a prescriptive easement has the burden of proving all elements."); *Davis* v. *Monteith*, 289 S.C. 176, 180, 345 S.E.2d 724, 726 (1986) (stating claimant had the burden of proving adverse possession by clear and convincing evidence); *see* 12 S.C. Jur. *Easements* § 10 (Supp. 2015) ("A prescriptive easement is analogous to adverse possession.").

Our state decisions on adverse possession are instructive because "[t]he right to an easement by prescription is substantially the same in quality and characteristics as that required to acquire title to real estate by adverse possession." 25 Am Jur. 2d *Easements & Licenses* § 39 (2014). Even so, these cases are not dispositive given the fundamental differences between a claim of adverse possession and one by prescription. Specifically, "adverse possession operates to *divest title* to the land at issue whereas the rights of prescriptive easement in land

are measured and defined *by the use* made of the land giving rise to the easement." *Id.* (emphasis added).

Moreover, other state jurisdictions are divided as to whether the standard of proving a prescriptive easement is by clear and convincing evidence or a preponderance of the evidence. *See* Daniel J. Smith, *Establishment of Private Prescriptive Easement*, 2 Am. Jur. *Proof of Facts* 3d 125 § 3 (1988 & Supp. 2015) (recognizing that majority of jurisdictions hold that the burden of proving an easement is on the party claiming such right and must be established by clear and convincing proof); James W. Ely, Jr. and Jon W. Bruce, *The Law of Easements and Licenses in Land* § 5:3 (Westlaw/Next 2015) ("Courts often stress the need for clear and convincing evidence. In some states, however, a claimant need only establish a prescriptive easement by a preponderance of the evidence." (footnotes omitted)).

While the Court of Appeals found it unnecessary to address this issue, we believe this case presents us with an opportunity to resolve the nebulous and conflicting authority. Our case law, albeit scant, provides some guidance. Notably, this Court in 1917 alluded to the heightened standard of proof when it stated, "a private way is an easement in favor of another, *in derogation of the rights of the owner*; and hence is not to arise without *clear, unequivocal proof of such facts* as will give the right from the owner to the claimant." *Williamson v. Abbott*, 107 S.C. 397, 401, 93 S.E. 15, 16 (1917) (emphasis added) (citation omitted).

Despite this pronouncement, *Williamson* has been rarely cited by our appellate courts. Yet, the Court's statement encapsulates the fundamental reason for applying a heightened standard of proof. Essentially, by claiming a prescriptive easement, a claimant seeks for a property owner to forfeit rights to the subject property. *See* Daniel J. Smith, *Establishment of Private Prescriptive Easement*, 2 Am. Jur. *Proof of Facts* 3d 125 § 3 (1988 & Supp. 2015) ("This stricter standard of proof may be a result of the general opinion expressed by courts and commentators that prescriptive rights are not favored in the law since they result in corresponding losses or forfeitures of rights of other persons."). Given that a prescriptive easement results in diminished rights of the property owner, we find that a claimant seeking a prescriptive easement must be held to a strict standard of proof. Accordingly, we join the majority of state jurisdictions and hold that a party claiming a prescriptive easement has the burden of proving all elements by clear and convincing evidence. We find this conclusion comports with prior case law and public policy.

Having determined the appropriate standard of proof,[4] we now analyze Shirley's procedural and substantive challenges to the decision of the Court of Appeals.

### b. Permissive Use

As a threshold matter, Shirley asserts the issue of permissive use serving as a bar to a prescriptive easement was not preserved for appellate review because it was not raised to and ruled upon by the special referee. We disagree with Shirley as Bundy repeatedly argued before the special referee that permissive use precludes the establishment of a prescriptive easement. Significantly, Shirley acknowledges this as he states in another section of his brief, "[a]t trial, Bundy raised the defense of permissive use to defeat the prescriptive easement sought by Shirley." The parties also stipulated that "[i]n 2004, Shirley put up a gate located on the property line between the Bundy Property and the property owned by the Miller Family with the permission of Bundy." Furthermore, the special referee expressly stated that "[p]ermission does not defeat an easement by prescription based on a claim of right" and ruled that Shirley proved his use was adverse despite Bundy's evidence of permissive use. Bundy challenged this ruling in his post-trial motion. Finally, Bundy raised the issue in his briefs to the Court of Appeals. Accordingly, we find the issue of Shirley's permissive use of the road was properly preserved for review by the Court of Appeals and this Court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998) (stating an issue must be raised to and ruled upon by the trial judge to be preserved for appellate review).

Even if the permissive use issue is deemed to have been properly preserved, Shirley claims the Court of Appeals improperly invaded the province of the special referee as factfinder because it substituted its own findings regarding permissive use. We find Shirley's argument to be without merit as the Court of Appeals expressly relied on the stipulations of fact and noted that stipulations are binding on the parties as well as the court. *See Bundy v. Shirley*, Op. No. 2013-UP-153, slip op. at 3 (S.C. Ct. App. filed May 8, 2013) (citing *McCrea v. City of Georgetown*, 384 S.C. 328, 332, 681 S.E.2d 918, 921 (Ct. App. 2009)). Thus, the Court of Appeals did not make its own findings of fact. Instead, it applied the law on prescriptive easements to the facts in the record.

---

[4] Because the correct standard of proof is clear and convincing evidence, we find the special referee erred as a matter of law in applying a preponderance of the evidence standard.

Next, Shirley argues the Court of Appeals erred in citing *Paine Gayle Props., L.L.C. v. CSX Transp., Inc.*, 400 S.C. 568, 735 S.E.2d 528 (Ct. App. 2012) for the proposition that permission defeats a claim to a prescriptive easement. *Bundy*, slip op. at 3. Shirley contends *Paine*, which was decided after the parties filed their briefs with Court of Appeals, should not have been applied retroactively by the Court of Appeals because it creates a "new affirmative defense" and a "new substantive right." Shirley explains that "permission to erect a gate, by itself, has never been held to defeat a prescriptive easement before in South Carolina common law."

In *Paine*, a landowner brought an action against a railroad company seeking an order establishing an easement across a right-of-way held by the railroad. *Paine*, 400 S.C. at 573, 735 S.E.2d at 531. The parties filed cross-motions for summary judgment, and the circuit court granted summary judgment to the railroad company. *Id.* The landowner appealed the decision to the Court of Appeals. *Id.*

The Court of Appeals affirmed, finding the circuit court properly granted summary judgment to the railroad company on the issues of easement by equitable estoppel, prescription, laches, and necessity. *Id.* at 575-93, 735 S.E.2d at 532-41. With respect to the landowner's prescriptive easement claim, the court found the landowner failed to present evidence creating a genuine factual issue as to whether the use of the right-of-way was "adverse" or under "claim of right" for the requisite twenty years. *Id.* at 583-87, 735 S.E.2d at 536-38.

In so ruling, the court extensively quoted *Williamson v. Abbott*, 107 S.C. 397, 93 S.E. 15 (1917) for the proposition that permissive use of property cannot ripen into an easement by prescription. *Paine,* 400 S.C. at 584, 735 S.E.2d at 537. Based on this authority, the Court of Appeals in *Paine* found the evidence established the permissive character of the landowner's use of the right-of-way and, as a result, did not show that the landowner's use was adverse or under claim of right. *Id.* at 587, 735 S.E.2d 538. Additionally, the court noted that by seeking permission from the railroad company to install a gate on the access road, the landowner implicitly acknowledged the railroad company's rights, which was inconsistent with the landowner's claim of right. *Id.* at 586, 735 S.E.2d at 538.

Ultimately, the court concluded the railroad company gave permission to the landowner to use its right-of-way. *Id.* Because there was no probative evidence showing that, after the railroad company granted this permission, the landowner made any distinct and positive assertion of a right hostile to the railroad company, the landowner's use could not be adverse or under a claim of right. *Id.*

Alternatively, even if the landowner's use could be characterized as adverse or under claim of right, the court found no probative evidence showing such an intent on the part of all previous owners of the property dating back twenty years. *Id.*

We are unpersuaded by Shirley's argument that *Paine* was retroactively applied as it was decided on November 14, 2012 before the Court of Appeals heard oral arguments on January 9, 2013. Thus, it was incumbent upon Shirley to either distinguish *Paine* or argue against it during oral arguments.

Even construing the Court of Appeals' application of *Paine* as retroactive, we discern no error. Based on our reading of *Paine*, the decision did not create new liabilities or substantive rights. Instead, the Court of Appeals relied on the 1917 case of *Williamson* for the proposition that permissive use of property cannot ripen into an easement by prescription. *Paine*, 400 S.C. at 583-86, 735 S.E.2d at 536-38. The Court of Appeals did not alter the holding in *Williamson*. Rather, it cited *Williamson* as supporting authority for its decision. Thus, prospective application was not required because the court did not create liability where formerly none existed. *See Toth v. Square D Co.*, 298 S.C. 6, 8, 377 S.E.2d 584, 585 (1989) ("The general rule regarding retroactive application of judicial decisions is that decisions creating new substantive rights have prospective effect only, whereas decisions creating new remedies to vindicate existing rights are applied retrospectively. Prospective application is required when liability is created where formerly none existed." (citations omitted)).

Having rejected Shirley's procedural issues, the question becomes whether the Court of Appeals correctly ruled as a matter of law that Bundy's grant of permission to Shirley to erect the gate automatically defeated his claim for a prescriptive easement. Shirley argues this ruling was in error for the following reasons: (1) the Court of Appeals' reliance on *Williamson* was incorrect because, unlike the instant case, the permissive use at issue in *Williamson* began at the "inception" of the use of the property; (2) the Court of Appeals improperly relied on a single stipulation of fact to reach its decision and, therefore, ignored the balance of the evidence presented at trial; and (3) even if the facts can be construed to find that Bundy granted Shirley permission to erect the gate, this permission was not fatal to his claim of a prescriptive easement.

Initially, we find that Shirley misconstrues *Williamson* as he seizes upon certain language in isolation to support his position. In *Williamson*, our Supreme Court stated:

It is the well-settled rule that *use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription*, since user as of right, as distinguished from permissive user, is lacking, **if permissive in its inception**, such permissive character will continue of the same nature, and no adverse user can arise, until there is a distinct and positive assertion of a right hostile to the owner, and brought home to him.

* * *

The asking and obtaining of permission, whether from the tenant or owner of the servient estate, stamps the character of the use as *not having been adverse, or under claim of right*, and, therefore, as lacking that essential element which was necessary for it to ripen into a right by prescription.

*Williamson v. Abbott*, 107 S.C. 397, 400-01, 93 S.E. 15, 16 (1917) (citation omitted) (emphasis added). *Williamson* stands for the general proposition that permissive use defeats the acquisition of a prescriptive easement. If the permissive use begins at inception or the time of purchase and continues, this permissive use can never ripen into a prescriptive easement. However, permissive use may not always begin at the inception of the claimant's ownership. Thus, *Williamson* also provides that permissive use, which is granted during the claimed twenty-year period, will defeat the establishment of a prescriptive easement, i.e., once permission is granted by the landowner there is no longer adverse use or use under a claim of right. Accordingly, we find the Court of Appeals correctly cited *Williamson* as supporting authority for its decision.

Rooted in *Williamson*, the law is well-established that evidence of permissive use defeats the establishment of a prescriptive easement because use that is permissive cannot also be adverse or under a claim of right. *See Paine*, 400 S.C. at 586, 735 S.E.2d at 538 (quoting *Williamson* and recognizing that a claimant's permissive use of landowner's property cannot begin to ripen into a prescriptive easement until the claimant makes a distinct and positive assertion of right hostile to the landowner); *Horry Cnty. v. Laychur*, 315 S.C. 364, 434 S.E.2d 259 (1993) (holding evidence, which established that use of property was permissive, showed use of property was not adverse); *Williamson*, 107 S.C. at 401, 93 S.E. at 16 (stating that permissive use of property "stamps the character of the use as not having been adverse, or under claim of right"); *see also* 12 S.C. Jur. *Easements* § 10 (Supp. 2015) ("Use with the permission of the owner is not

adverse.").  Stated another way, when a claimant uses property with the permission of the owner, he or she acknowledges the owner's rights and uses the property without an affirmative, hostile act toward the owner's rights.

Here, Shirley maintained that he was entitled to a prescriptive easement based on a claim of right to the property and, alternatively, that his use was adverse.  We find that each of Shirley's theories fails due to his permissive use of the Bundy property.  When Shirley's parents purchased the property in 1985, the SCDNR leased the property from Bowater and permitted the public to hunt on the property.  Thus, during hunting season, Shirley's use of the property was either with the permission of Bowater or not exclusive as he had no greater right than members of the public.  *See Cleland v. Westvaco Corp.*, 314 S.C. 508, 511, 431 S.E.2d 264, 266 (Ct. App. 1993) (finding that claimant "did not establish a private right under a prescriptive easement, because he failed to produce evidence that his use was exclusive and was different from the right which could be asserted by members of the general public").  During the off-season, Bowater locked the cable restricting access to the property.  Shirley, however, used the property with the permission of Bowater as he was given a key by the SCDNR game warden.  Although the presence of the locked cable was not dispositive of permissive use, it is strong evidence of permissive use of the disputed road.  *See Rathbun v. Robson*, 661 P.2d 850, 852 (Mont. 1983) ("Although the presence of gates alone will not defeat a prescriptive easement, they are strong evidence indicating permissive use.").

Furthermore, as stipulated by the parties, Bundy granted Shirley permission in 2004 to construct a gate on his property in the same location as the Bowater cable.  By contacting Bundy regarding the gate, Shirley implicitly acknowledged Bundy's right to the property, thus, defeating Shirley's own claim of right theory.  *See Paine*, 400 S.C. at 586, 735 S.E.2d at 538 (concluding that claimant's decision to seek permission from landowner to install a gate on an access road constituted an implicit acknowledgment of landowner's rights that was "inconsistent with a claim of right, which is without recognition of the rights of the owner of the servient estate" (citation omitted)).

The parties' stipulations also established that Bundy did not merely acquiesce in Shirley's use of the property but expressly granted Shirley permission to use his property to build a gate.  Not until Bundy revoked his permission in 2005 and requested that Shirley remove the gate did Shirley assert his right to use the disputed road or affirmatively act in a manner hostile to Bundy's ownership rights.

Therefore, we find the Court of Appeals correctly held that Shirley's permissive use of the property defeated his acquisition of a prescriptive easement.

### c. Requisite Twenty-Year Period

Alternatively, even if his personal use was not adverse or under claim of right for a continuous twenty-year period, Shirley argues the requisite time period was established because his predecessor-in-title, the Bennett family, used the disputed road adversely and continuously from 1947 to 1969. As a result, Shirley claims the Court of Appeals erred in requiring him to prove a period of use beyond the Bennett family ownership and, in turn, in excess of twenty years.

Shirley maintains that such a decision violates the principle that once an easement has been "perfected" it applies to all future owners of the dominant estate unless the owner of the servient estate shows some adverse act to obstruct the road that would defeat the easement. For this principle, Shirley relies on the language in *Cuthbert v. Lawton*, 14 S.C.L. (3 McCord) 194 (1825), which states "after twenty years of uninterrupted use, [the easement by prescription] could only be defeated by an adverse and continued obstruction for five years." As a result, Shirley asserts Bundy had the burden of showing some adverse act to obstruct the disputed road between 1969, the end of the Bennett family's ownership, and 1985, the beginning of the Shirley family's ownership.

We question the propriety of *Cuthbert* because the case inexplicably requires a five-year period of adverse and continued obstruction to defeat an established prescriptive easement. In the 190 years since the *Cuthbert* decision was issued, our case law regarding prescriptive easements has evolved and now refers to and requires "continual use" for the easement to remain viable to subsequent claimants. *See Jones v. Daley*, 363 S.C. 310, 318, 609 S.E.2d 597, 600-01 (Ct. App. 2005) ("[U]nder long established principles of South Carolina law, once a right of way by prescription has been established by twenty years of continuous use, a later diminishment in the frequency of that use does not necessarily nullify the established right by prescription. Furthermore, in order to satisfy the continual use requirement, the use must only be of a reasonable frequency as determined from the nature and needs of the claimant." (citing *Cuthbert*)).

Moreover, *Cuthbert* is also factually distinguishable from the instant case. *Cuthbert* concerned an easement used by the former owners of the defendant's dominant estate for thirty-one uninterrupted years up until the defendant's ownership. *Cuthbert,* 14 S.C.L at 194. The court found that an easement by

prescription was established during that thirty-one years and the diminished use of the easement by the defendant did not defeat the easement. *Id.* In contrast, in this case, there is no evidence of the use of the easement from 1969, when Shirley alleges the easement was perfected, and 1985, the time Shirley's parents purchased the property. Unlike the defendant in *Cuthbert*, Shirley attempts to rely on the ownership of remote predecessors-in-title with no evidence regarding the use of the other owners in his chain-of-title. Consequently, we find Shirley's reliance on *Cuthbert* to be misplaced.

However, Shirley is correct that the adverse use to establish a claim for prescriptive easement need not be continuous to him personally. *See Morrow v. Dyches*, 328 S.C. 522, 527, 492 S.E.2d 420, 423 (Ct. App. 1997) ("A party may 'tack' the period of use of prior owners in order to satisfy the 20-year requirement."); *see also Kelley v. Snyder*, 396 S.C. 564, 575, 722 S.E.2d 813, 819 (Ct. App. 2012) ("The time of possession may be tacked not only by ancestors in heirs, but also between parties in privity in order to establish the 20-year period." (citation omitted)).

Nonetheless, Shirley cannot establish the period of prescription merely by referencing the twenty-two-year ownership by the Bennett family. Instead, there are specific requirements that must be met. As explained by one secondary source:

> Successive uses of land by different persons may be tacked, or added together, to satisfy the prescriptive period. Tacking is permitted when the successive adverse users are in privity of estate. Although the requirement of privity has been variously defined, the prevailing view is that there must be some relationship whereby the successive users have come into possession under or through their predecessors in interest. *It follows that claimant may not tack the claimant's adverse use to that of strangers, nor may a claimant tack the claimant's adverse use to that of a predecessor in title when the predecessor's usage terminated before claimant acquired the land. Moreover, a claimant cannot tack adverse use with prior adverse use when intervening parties used land with permission. Nor is tacking permissible when it is unclear that use by claimant's predecessor was adverse.* In order to establish continuity of use by tacking, a claimant must show that predecessors in title actually used the alleged easement.

James W. Ely, Jr., and Jon W. Bruce, *The Law of Easements and Licenses in Land*, § 5:19 (Westlaw/Next 2015) (footnotes omitted) (emphasis added).

Applying the foregoing to the facts of the instant case, we initially question whether Shirley presented clear and convincing evidence that the Bennett family had a prescriptive easement. Other than the twenty-two-year period of ownership, there is limited evidence that the Bennetts' use met the elements of a prescriptive easement. In particular, Edward Bennett, who testified on behalf of Shirley, had no knowledge regarding the use of the property or the disputed road after he moved away from home in 1960.

But, even assuming the Bennett family acquired a prescriptive easement, there is no evidence as to whether the intervening predecessors-in-title actually used the disputed road. *Cf. Jones v. Daley*, 363 S.C. 310, 318, 609 S.E.2d 597, 601 (Ct. App. 2005) (stating that "in order to satisfy the continual use requirement, the use must only be of a reasonable frequency as determined from the nature and deeds of the claimant"). Furthermore, Shirley did not establish that the previous owners' use of the disputed road continued to be adverse or under a claim of right between 1969 and 1985. *See Morrow*, 328 S.C. at 528, 492 S.E.2d at 424 ("[I]f tacking is used, 'the use by the previous owners must also meet the requirements of a prescriptive easement'" (quoting 25 Am. Jur. 2d *Easements and Licenses* § 70, at 640 (1996))); *Kelley*, 396 S.C. at 575, 722 S.E.2d at 819 ("If tacking is used, the use by the previous owners must have also been adverse or under a claim of right."). Accordingly, we hold the Court of Appeals correctly found that Shirley could not tack the Bennett family's use to establish his prescriptive easement claim.

### IV.    Conclusion

In conclusion, we find the Court of Appeals correctly reversed the special referee's grant of a prescriptive easement to Shirley. We modify the decision to the extent we hold that a party claiming a prescriptive easement has the burden of proving all elements by clear and convincing evidence.

Based on the foregoing, the decision of the Court of Appeals is

**AFFIRMED AS MODIFIED.**

**TOAL, C.J., KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in result only.**