**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Thomas C. Skelton, Appellant,

v.

First Baptist Church of Travelers Rest, South Carolina, a non-profit Corporation, Respondent.

Appellate Case No. 2020-001051

---

Appeal From Greenville County
Perry H. Gravely, Circuit Court Judge

---

Opinion No. 2023-UP-260
Submitted May 1, 2023 – Filed July 12, 2023

---

**AFFIRMED**

---

Bradford Neal Martin and Laura Wilcox Howle Teer, both of Bradford Neal Martin & Associates, PA of Greenville, for Appellant.

Oscar W. Bannister, of Bannister, Wyatt & Stalvey, LLC, of Greenville, for Respondent.

---

**PER CURIAM:** This appeal stems from a property dispute in which Thomas Skelton contends the circuit court erred in granting First Baptist Church of Travelers Rest's (Church) motion for summary judgment on his claims seeking a

prescriptive easement across Church's property, title to Church's lot by adverse possession, a permanent easement by necessity, and an easement due to the breach of a de facto lease. We affirm.

## FACTS/PROCEDURAL HISTORY

Skelton purchased certain real property in Travelers Rest in March 1992 while employed as a police officer. Church acquired the adjoining lot in 1993. Skelton left the police force in 1994 and began a landscaping business. As a result, Skelton set up a work shop on the rear of his lot where he parks and repairs his landscaping equipment and trucks. However, based on the way his house is situated on his property, Skelton began using a strip of Church's lot to reach the rear of his property. Skelton realized soon after purchasing the property that he had a water problem and, as a result, constructed a French drain and a small berm along the property line of Church's lot. Further, Skelton realized he had a problem with mice, which attracted snakes. Based on advice given by a hired exterminator, Skelton's wife spoke with Church to receive permission to mow the tall grass in a section of Church's lot to minimize the amount of mice. Skelton also installed an invisible dog fence and planted a maple tree on Church's lot without permission.

In 2019, Church revoked its permission for Skelton to use a portion of its lot for access to his lot. As a result, Skelton wrote a letter to Church dated February 28, 2019. His letter stated, in part:

> My wife and I have spoken with several pastors and deacons over the past 20 plus years and we were told by all of them that it was fine for us to use the lower portion of the field so that we could have ingress and egress to the rear of our property. In addition, a written agreement was also put into effect to codify this in writing. During the period I have lived here, I have mowed and bush hogged, grassed and fertilized the field at my expense. I have done this because the failure to do so would cause serious damage to my home and property.

Church declined to reverse its decision to revoke its permission for Skelton to use its lot for ingress and egress. Skelton then filed a complaint seeking a prescriptive easement across Church's property, title to Church's lot by adverse possession, a permanent easement by necessity, and an easement due to the breach of a de facto

lease.[1]  Church answered and denied all causes of action.  Thereafter, Church filed a motion for summary judgment, accompanied by a memorandum in support, alleging there were no genuine issues of material fact.  The matter was heard on June 11, 2020.

As to Skelton's claim for a prescriptive easement, the court found his own testimony and letter to Church made it clear he used Church's property with its permission and, therefore, was not entitled to a prescriptive easement.  As to Skelton's claim alleging a de facto lease existed, the court found Skelton asked the court for use of Church's land beyond a year, which necessitated a writing signed by the parties to satisfy the Statute of Frauds.  Therefore, the unsigned agreement offered Skelton no relief on a claim of a de facto lease.  As to Skelton's claim for an easement of necessity, the court found Skelton received his property in March 1992 and, at that time, he was a police officer.  Skelton left the police force in 1994 and formed his current landscaping business.  Skelton's issue with ingress and egress stems from his current business practices, and therefore, his claimed necessity failed because it did not exist when he purchased his lot. The court thus found his subsequent use of Church's property was a matter of convenience.  As to Skelton's claim of adverse possession, the court found Skelton had Church's permission to use the strip of the lot for ingress and egress and therefore his claim failed.  Further, the court found Skelton's placement of the berm on his property line and the electric fence did not rise to the level of possession supporting adverse possession.

Skelton subsequently filed a motion to alter or amend, which the circuit court denied.  This appeal followed.

**ISSUE ON APPEAL**

Did the circuit court err in granting Church summary judgment?

---

[1] In his briefs, Skelton failed to argue whether the circuit court erred in failing to find a breach of a de facto lease.  An issue that is not argued in the brief is deemed abandoned and precludes consideration on appeal.  Rule 208(b)(1)(D), SCACR; *see Jinks v. Richland County*, 355 S.C. 341, 344 n. 3, 585 S.E.2d 281, 283 n. 3 (2003).  Therefore, any arguments related to a de facto lease are abandoned.

**STANDARD OF REVIEW**

> When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

*S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 490, 732 S.E.2d 205, 208–09 (Ct. App. 2012). "In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party." *Id.* at 490, 732 S.E.2d at 209.

**LAW/ANALYSIS**

A. *Prescriptive easement*

Skelton argues he presented a question of material fact as to whether he possessed Church's property without permission when he built a berm, landscaped the property, planted trees, installed power conduits, placed an out-building, and installed the electric dog fence, all of which were clearly visible to Church. Skelton asserts these facts are not in dispute and thus the inferences drawn from them must favor him, requiring further factual inquiry. Skelton contends his acts in excess of ingress and egress were open and notorious, providing Church with an opportunity to protect its rights, which it failed to do.

"In order to establish a prescriptive easement, the claimant must identify the thing enjoyed, and show his use has been open, notorious, continuous, uninterrupted, and contrary to the true property owner's rights for a period of twenty years." *Simmons v. Berkeley Elec. Coop., Inc.*, 419 S.C. 223, 233, 797 S.E.2d 387, 392 (2016). "[W]hen it appears that claimant has enjoyed an easement openly, notoriously, continuously, and uninterruptedly, in derogation of another's rights, for the full period of 20 years, the use will be presumed to have been adverse." *Id.* (quoting *Williamson v. Abbott*, 107 S.C. 397, 400, 93 S.E. 15, 16 (1917)). "[A] party claiming a prescriptive easement has the burden of proving all elements by clear and convincing evidence." *Bundy v. Shirley*, 412 S.C. 292, 306, 772 S.E.2d 163, 170 (2015).

As a threshold matter, Skelton maintains his possession of the property was without permission and his use of the granted easement beyond its purpose warrants a prescriptive easement. Church relies on the fact that permissive use bars Skelton's claim to a prescriptive easement. As such, the issue of permissive use is dispositive of Skelton's claim for a prescriptive easement.

"[T]he law is well-established that evidence of permissive use defeats the establishment of a prescriptive easement because use that is permissive cannot also be adverse or under a claim of right." *Id.* at 310, 772 S.E.2d at 173; *see also Paine Gayle Props., L.L.C. v. CSX Transp., Inc.*, 400 S.C. 586, 735 S.E.2d 538 (Ct. App. 2012) (recognizing that a claimant's permissive use of landowner's property cannot begin to ripen into a prescriptive easement until the claimant makes a distinct and positive assertion of right hostile to the landowner); *Horry County v. Laychur*, 315 S.C. 364, 367–68, 434 S.E.2d 259, 261 (1993) (holding evidence, which established that use of property was permissive, showed use of property was not adverse); *Williamson*, 107 S.C. at 401, 93 S.E. at 16 (stating that permissive use of property "stamps the character of the use as not having been adverse, or under claim of right"). "Stated another way, when a claimant uses property with the permission of the owner, he or she acknowledges the owner's rights and uses the property without an affirmative, hostile act toward the owner's rights." *Bundy*, 412 S.C. at 310, 772 S.E.2d at 173. "However, permissive use may not always begin at the inception of the claimant's ownership. Thus, . . . permissive use, which is granted during the claimed twenty-year period, will defeat the establishment of a prescriptive easement. . . ." *Id.*

Here, it is undisputed that Skelton filed this lawsuit in an effort to obtain a prescriptive easement across Church's property to access the rear of his lot. Further, it is undisputed that Skelton's 2019 letter and testimony demonstrate that, over the last twenty years, Skelton repeatedly obtained permission to have ingress and egress. Therefore, the record demonstrates no issue of material fact regarding whether Skelton's use was permissive. Because there is no genuine factual issue as to whether Skelton's use was "adverse," summary judgment on Skelton's prescriptive easement claim was proper.

B. *Easement by necessity*

Skelton argues the record demonstrates that at the time he purchased his property, vehicular access to the back portion of the property was only available through Church's lot. As such, Skelton argues the access to the back of the property was cut off when the single tract was severed into two parcels. Further, Skelton argues

that when he purchased his home in 1992, there was an existing back building formerly used as a blacksmith shop and that the driveway on Church's lot was not for the purpose of accessing the house that originally stood on the lot. The inference, therefore, is that the driveway was necessary to access the blacksmith shop at the rear of what is now Skelton's property at the time the property was severed.

"The elements of a claim for easement by necessity are: (1) unity of title, (2) severance of title, and (3) necessity." *Paine Gayle Props.*, 400 S.C. at 589, 735 S.E.2d at 539. "The necessity required for easement by necessity must be actual, real, and reasonable as distinguished from convenient, but need not be absolute and irresistible." *Id.* at 590, 735 S.E.2d at 540 (quoting *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 420, 633 S.E.2d 136, 141 (2006)). "The necessity element of easement by necessity *must exist at the time of the severance* and the party claiming the right to an easement *must not create the necessity when it would not otherwise exist*." *Boyd*, 369 S.C. at 420, 633 S.E.2d at 141 (emphases added).

The record is clear that Skelton purchased his property in 1992 while he was employed as a police officer. Skelton left the police force two years later in 1994 and began his landscaping business. Skelton then created a workshop for this business at the rear of his lot, which required use of Church's land for access. Thus, the "necessity" did not exist at the time of severance, and Skelton subsequently created the necessity. Because there is no genuine factual issue as to whether the necessity existed at the time of the severance of the property, summary judgment on Skelton's easement by necessity claim was proper.

C. *Adverse possession*

Skelton argues he presented evidence of his exercise of control over a portion of Church's lot by mowing, installing an electric dog fence, and planting shrubs and trees. Skelton contends he did not receive permission for any of these adverse uses on the property. Further, Skelton asserts the circuit court overlooked that there exists a genuine issue as to the scope of any permission given. Skelton contends his actions in excess of ingress and egress were open and notorious, providing Church with an opportunity to protect its rights, which it failed to do.

"In South Carolina, adverse possession may be established if the elements of the claim are shown to exist for at least ten years." *Jones v. Leagan*, 384 S.C. 1, 10 681 S.E.2d 6, 11 (Ct. App. 2009); S.C. Code Ann. § 15-67-210 (2005). "In order to establish a claim of adverse possession, the claimant must prove by clear and

convincing evidence his possession of the subject property was continuous, hostile, actual, open, notorious, and exclusive for the statutory period." *McDaniel v. Kendrick*, 386 S.C. 437, 442, 688 S.E.2d 852, 855 (Ct. App. 2009). "[A]n actual, exclusive, open and notorious possession without the consent of the title owner is both wrongful and adverse and will ripen into perfect title in the usual way when the statute of limitations has run." *Id.* (quoting *Knox v. Bogan*, 322 S.C. 64, 70, 472 S.E.2d 43, 47 (Ct. App. 1996)).

It is apparent that, similar to Skelton's aforementioned causes of action, his claim for adverse possession fails because he had permission to use Church's property for ingress and egress until that permission was revoked in 2019. Because there is no genuine factual issue as to whether Skelton had permission to use Church's property for ingress and egress, summary judgment on Skelton's adverse possession claim was proper.

**CONCLUSION**

Based upon the facts demonstrating that Skelton received repeated permission to access Church's property for ingress and egress, we **AFFIRM** the circuit court's order granting summary judgment.[2]

**WILLIAMS, C.J., and GEATHERS and VERDIN, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.